UNITED STATES, Appellee

v.

Jack B. SUMRALL, Captain U.S. Air Force, Appellant.

No. 95–0720,
Crim. App. No. 31151.

U.S. Court of Appeals for the Armed Forces.

Argued Feb. 1, 1996.

Decided Sept. 30, 1996.

For Appellant: *Major Ormond R. Fodrea* (argued); *Colonel Jay L. Cohen* (on brief).

For Appellee: *Captain R. Scott Howard* (argued); *Lieutenant Colonel Michael J. Breslin* (on brief).

## Opinion of the Court

SULLIVAN, Judge:

My object all sublime I shall achieve in time to let the punishment fit the crime—the punishment fit the crime.[1]

This is a case where we must measure the sentence of a court-martial against the yardstick of the Due Process Clause of the Fifth Amendment of the Constitution.

Appellant was tried by a general court martial composed of a military judge sitting alone at Ramstein Air Base, Germany, on February 24, 1994. In accordance with his pleas, he was found guilty of committing indecent acts with a female under the age of 16 years (2 specifications), in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. He was sentenced to dismissal and confinement for 4 years. The convening authority approved the sentence as adjudged on May 2, 1994. The Court of Criminal Appeals in an unpublished opinion affirmed on March 8, 1995.

On September 5, 1995, this Court specified the following issue for review:

WHETHER THE EFFECT OF THE SENTENCE (DISMISSAL) VIOLATES THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE CONSTITUTION.

We hold that appellant's court-martial sentence did not deprive him of his retirement pay and other retirement benefits without due process of law. *See generally Weiss v. United States,* 510 U.S. 163, 114 S.Ct. 752, 127 L.Ed.2d 1 (1994); and *United States v. Griffin,* 25 MJ 423 (CMA 1988); *see also* 10 USC § 8911.

The record of trial in this case shows that appellant had completed 21 years of enlisted and commissioned officer service. It also shows that at the time of trial appellant's base pay was $3427.10 per month. His wife testified that it was her understanding that she would receive no military benefits if her husband was dismissed from the service. Finally, defense counsel, at least implicitly, argued that appellant's dismissal would leave him and his family with nothing.

Before this Court, appellant asserts that if he were allowed to retire he would receive approximately $20,562.60 per year for the rest of his life. It is further asserted that, "assuming the appellant would live until the age of seventy (he is now 40), the uncompounded and non-inflation adjusted total he would receive would be $616,878.00." Final Brief at 2. No objection to appellant's sentence was made at trial.

— — —

The broad question presented in this case is whether a court-martial sentence to a dismissal unlawfully denied retirement benefits to appellant, a retirement eligible military officer. At the outset, we recognize that appellant was not sentenced to a forfeiture of his retirement pay or other retirement benefits. For that matter, there is no express authorization in the Uniform Code of Military Justice or the Manual for Courts–Martial for the denial of retirement benefits. However, the Uniform Code of Military Justice does authorize punitive discharges (dismissal for officers-*see* Arts. 66(b)(1) and 71(b) & (c)(1), UCMJ, 10 USC § 866(b)(1) and 871(b) & (c)(1), respectively), and appellant received that punishment. Moreover, in certain cases, a punitive discharge such as a dismissal might automatically trigger a loss of retirement benefits as a matter of statutory law not found in the Uniform Code of Military Justice. *See McCarty v. McCarty,* 453 U.S. 210, 222 n. 14, 101 S.Ct. 2728, 2736 n. 14, 69 L.Ed.2d 589 (1981); 5 USC § 8312 (loss of retired pay due to court-martial conviction for certain national security offenses); 38 USC § 5303(a) (loss of veterans benefits when dismissed from service by general court-martial). Finally, it has also been held that a dismissal effectively terminates a retired servicemember's entitlement to retire-

---

1. W.S. Gilbert, *The Mikado,* Act II, lines 337–40 (1884).

ment pay. *See Hooper v. United States,* 164 Ct.Cl. 151, 326 F.2d 982, 988 (1964) (Admiral Hooper was tried in his retired status and was receiving retired pay-*see generally United States v. Hooper,* 9 USCMA 637, 26 CMR 417 (1958)).

In this context, we are not inclined to overlook this issue simply because appellant's court-martial sentence did not expressly deny him retired pay. We recognize that the decision to retire an officer in appellant's grade and time in service rests by statute with his service Secretary. Title 10 USC § 8911 states:

> (a) The Secretary of the Air Force *may,* upon the officer's request, retire a regular or reserve commissioned officer of the Air Force who has at least 20 years of service computed under section 8926 of this title, at least 10 years of which have been active service as a commissioned officer.

*See also* 10 USC § 638 (selective early retirement without request).

■ In light of the above, the specified issue before us is whether appellant's court-martial denied him his retirement pay and other retirement benefits without due process of law. *See Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Appellant did not make this legal claim at his court-martial or before the Court of Criminal Appeals. Moreover, to our knowledge, he has not even requested retirement, and the Secretary of the Air Force has not otherwise retired him. *See* 10 USC §§ 8911 and 639 (service secretary may postpone retirement decision pending court-martial proceedings). Accordingly, a substantial question exists whether he has a legally sufficient property interest at the present time for purposes of a Due Process Clause claim. *See United States v. Larionoff,* 431 U.S. 864, 97 S.Ct. 2150, 53 L.Ed.2d 48 (1977); *Zucker v. United States,* 758 F.2d 637 (Fed.Cir.1985); *see also Norman v. United States,* 183 Ct.Cl. 41, 392 F.2d 255, 265 (1968), citing *Bell v. United States,* 366 U.S. 393, 81 S.Ct. 1230, 6 L.Ed.2d 365 (1961); *but see Barker v. Kansas,* 503 U.S. 594, 605, 112 S.Ct. 1619, 1626, 118 L.Ed.2d 243 (1992) (military retirement benefits are to be con-

sidered deferred pay for past services for purposes of 4 USC § 111).

. **[2, 3]** Assuming he does have such an interest, the next question is whether he was afforded due process at his court-martial with regard to the taking or denial of retirement benefits. *See Brock v. Roadway Exp., Inc.,* 481 U.S. 252, 262, 107 S.Ct. 1740, 1747, 95 L.Ed.2d 239 (1987). The potential loss of retirement benefits was a proper matter for consideration by factfinders at appellant's courts-martial. *See generally* RCM 1001(c)(1)(B), Manual for Courts–Martial, United States, 1984 (defense may present matters in mitigation "to lessen the punishment to be adjudged by the court-martial"). This Court has held that retirement-eligible servicemembers are entitled to place into evidence the fact that a punitive discharge would deny them retirement benefits. *United States v. Griffin,* 25 MJ 423 (1988). Furthermore, servicemembers associated with loss of retirement pay, subject to foundational requirements related to the reliability of their projections, may present evidence of the potential dollar amount subject to loss. *Id.*; *cf. United States v. Henderson,* 29 MJ 221 (CMA 1989). Accordingly, to the extent that a dismissal affects retirement benefits including pay, we conclude these procedures satisfy the meaningful-opportunity-to-be-heard concerns of the Due Process Clause. *See generally Weiss v. United States,* 510 U.S. 163, 114 S.Ct. 752, 127 L.Ed.2d 1 (1994); *Brock v. Roadway Exp., Inc., supra.*

■ A second constitutional issue arising in this context is whether an expected forfeiture of some $600,000 is "cruel and unusual" punishment within the meaning of the Eighth Amendment. *See Harmelin v. Michigan,* 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991). Appellant argues that "[s]urely any fine assessed in such amount [over half a million dollars] constitutes cruel and unusual punishment under the Eighth Amendment." Final Brief at 4. We disagree.

Dismissal (a punitive discharge for officers) is a punishment long known to our military and the armies of other civilized countries. *See United States v. Ohrt,* 28 MJ 301, 306 (CMA 1989); *see also* W. Winthrop,

*Military Law and Precedents* 405–06 (2d ed. 1920 Reprint). Moreover, forfeiture of pay and retired pay are punishments that are well-recognized punishments at American courts-martial. *Id.* at 427–31; *see McCarty v. McCarty*, 453 U.S. at 222 n. 14, 101 S.Ct. at 2736 n. 14. Finally, the effect of dismissal on retirement pay has long been recognized. *See Hooper v. United States, supra* (since plaintiff was validly dismissed from the Navy, his entitlement to retired pay no longer existed). Accordingly, dismissal, with its effect of denying future retirement pay, is not cruel and unusual[2] in the sense intended by the Eighth Amendment. *Harmelin v. Michigan, supra* at 976, 111 S.Ct. at 2691.

■ A related constitutional issue also arising in this case is whether the expected forfeiture of some $600,000 in retirement pay is "an excessive fine" within the meaning of the Eighth Amendment. *See Austin v. United States*, 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993). Appellant argued before the Court of Criminal Appeals that a huge forfeiture of money for only 2 specifications of indecent acts with one girl was clearly "disproportionate." We note that the amount of retirement pay purportedly forfeited in this case is clearly speculative to the extent that it depends on a prediction of appellant's life expectancy. In any event, the 2 specifications of which appellant was convicted involved numerous diverse sexual acts committed with a minor by a military officer over a lengthy period of time. *See Alexander v. United States*, 509 U.S. 544, 559–60, 113 S.Ct. 2766, 2776, 125 L.Ed.2d 441 (1993). We find no excessive or disproportionate forfeiture as prohibited by the Eighth Amendment in these circumstances.

■ A final constitutional issue arising in this case is whether the future denial of retirement pay and other retirement benefits in addition to his court-martial sentence violates the Double Jeopardy Clause of the Fifth Amendment. *See United States v. Halper*, 490 U.S. 435, 448–49, 109 S.Ct. 1892, 1902, 104 L.Ed.2d 487 (1989). As noted

above, it is the Secretary of the Air Force who denies retired status to a servicemember, *see* 10 USC § 8911, not a court-martial. This Court has no jurisdiction to review a service Secretary's decision under 10 USC § 8911, when and if such action is taken. *See* Art. 67, UCMJ, 10 USC § 867 (1989). However, military retirement pay, at least in part, is intended as reduced compensation for future services that appellant by reason of his dismissal cannot perform. *See* 10 USC § 688; *McCarty v. McCarty*, 453 U.S. at 221–22, 101 S.Ct. at 2735–36. In this sense, denial of his retirement pay is remedial and might not be considered a plain-error violation of the Double Jeopardy Clause. *See Austin v. United States*, 509 U.S. at 619–23, 113 S.Ct. at 2811–12.

■ Moreover, the consequences that appellant suffers after execution of a proper sentence under the law of the Uniform Code of Military Justice is a matter outside our jurisdiction as a court under Article 67. Even though a court-martial sentence may result in a huge loss of retirement pay, loss of veteran benefits, loss of the right to vote, or possess firearms, etc., these consequences all are beyond our jurisdiction.

Jurisdiction or judicial power is a matter of time and place. The time when a court or an authority has jurisdiction is determined by the law which invests that court or authority with the power to act on a case. *See United States v. Boudreaux*, 35 MJ 291, 296 (CMA 1992) (Sullivan, C.J., concurring in the result). The area or scope of a court's jurisdiction also is set by the law that both defines and limits the power of the court to act.

Our Court has judicial power over a special field of law, and that field is defined in the federal law of the Uniform Code of Military Justice. We as a court tend and cultivate this special field of justice in the military. We can use the Constitution as a measure of fairness and a tool of redress in that field. The criminal trial and the criminal sentence of appellant are within that field. However, in this case, we can give no relief because the

---

**2.** Article 53, Uniform Code of Military Justice, prohibits "any other cruel or unusual punishments." Assuming that standard is more favorable to a military accused than the Eighth Amendment, we find no violation of that standard in this case.

consequences appellant complains of (the loss of retirement pay) are outside the boundaries of our field of law. *See generally United States v. Blocker,* 33 MJ 349 (CMA 1991); *cf. United States Navy–Marine Corps Court of Military Review v. Cheney,* 29 MJ 98 (CMA 1989). Title 10 USC §§ 8911 and 639 are the laws that take away the projected $600,000 pension. Each is a civil, not a criminal law. As much as we may like to measure that law, it is beyond our power and reach. Perhaps another court can help appellant. We cannot and will not.

The decision of the United States Air Force Court of Criminal Appeals is affirmed.[3]

Chief Judge COX, Judges CRAWFORD and GIERKE, and Senior Judge EVERETT concur.

---

3. It is my personal belief that something should be done about the problem in the military justice system where the effect of the court-martial sentence for a crime inevitably triggers a huge loss in retirement pay. There is a solution to this problem. I have written about it but can do no more. *See* Appendix. Of course, I will continue to apply the law as it presently is. As Justice Oliver Wendell Holmes, Jr., once remarked in a discussion with the Solicitor General, John W. Davis, when told that many more Sherman Anti–Trust Laws cases were headed to the Supreme Court:

> Well, bring 'em on and we'll decide them. Of course I know, and every sensible man knows, that the Sherman [Anti–Trust] Law is damned nonsense, but if my country wants to go to hell, I am here to help it.

W. Harbaugh, *A Lawyer's Lawyer: The Life of John W. Davis* (Oxford University Press).

# APPENDIX

## *United States Court of Appeals for the Armed Forces*

| | | |
|---|---|---|
| UNITED STATES, | ) | USCA Dkt. No. 96-0619/AF |
| | ) | Crim.App. No. S29118 |
| Appellee | ) | |
| | ) | |
| v. | ) | ORDER DENYING PETITION |
| | ) | |
| | ) | |
| Kenneth L. | ) | |
| IVES, Jr. (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), | ) | |
| Appellant | ) | |

On consideration of the petition for grant of review of the decision of the United States Air Force Court of Criminal Appeals, it is by the Court this 2nd day of July, 1996,

ORDERED:

That said petition be, and the same is hereby denied.


SULLIVAN, Judge (dissenting):

Under the existing law, I would grant and affirm this case. However, I respectfully dissent from the law I must apply in this case, and I hope my dissent will call attention to what I perceive as a flaw in our system of justice and suggest a remedy to this flaw.

It's important to see the facts in this case in order to outline the flaw in the system. Appellant was a Desert Storm veteran and staff sergeant with 15 years of superior service. At the time of his crime, he was within weeks of getting out of the Air Force with early separation pay of over $200,000. He is the sole supporter of his wife, his daughter, and his mother who lives with him. This was his crime -- at a party, two women encouraged him to share one of their marijuana cigarettes. A subsequent random drug test showed him positive for marijuana. He admitted to the offense and for punishment was given confinement of 2 months, forfeiture of $700.00 pay, reduction to E-3, and a bad-conduct discharge.

This is a typical result in a court-martial in the United States military today. The punishment here was not unexpected because the

modern military is an all-volunteer force with high standards. A conviction by a court-martial even for a minor crime (by civilian standards) usually carries with it a discharge from the service. Even a one-time first offender usually gets a punitive discharge. The bad-conduct discharge here carried with it an automatic loss of the $200,000 early separation pay. In many cases where the servicemember has served over 20 years and thus is entitled to annual retirement pay and medical benefits for life, the loss of these benefits is likewise automatic with a punitive discharge, This additional loss of benefits can well result in a loss of over a million dollars, depending on one's rank and length of service.

Presently, there are only five general punishments available in a military trial: death, in rare cases; confinement; loss of rank; monetary loss (forfeiture of pay and allowances or fine), and a punitive discharge (or dismissal) from the service. In the modern military, high standards are set and a conviction of a crime in a court-martial usually brings on discharge and the automatic loss of a pension and medical benefits if a person has served over 20 years.

Time Magazine recently related a story of a Coast Guard officer with 30 years of service who committed suicide during a criminal investigation following the officer's telling three "sexist jokes" to 118 cadets in a dinner speech at the Coast Guard Academy, Time Magazine related that the officer, with a wife and two children, "feared the loss of a pension that a court-martial might mean." ("A Political Suicide," Time Magazine at 44 (May 13, 1993)) With regard to the case at bar, I doubt that there is any jurisdiction in America outside of the military where a first-time offender, who takes several puffs of a marijuana cigarette, is punished by 60 days in jail and a fine of over $200,000.

My suggestion is that a new option be added to the list of possible punishments that a court-martial may consider--a discharge with no loss of retirement benefits.

This new punishment will allow better and more flexible justice in the present system. Our Court must do justice within the existing system. We cannot by judicial rulemaking or legislation create a new type of punishment. However, the President by exercising his power under Article 56, Uniform Code of Military Justice, 10 USC § 856, or Congress by legislation, can give the court-martial this new type of punishment. The new punishment option for a court-martial may not be able to help the instant appellant but future minor criminal offenders may benefit from a punishment that better fits the crime.

For the Court,


/s/ John F. Cutts, III
Deputy Clerk of the Court

cc:   The Judge Advocate General of the Air Force
      Appellate Defense Counsel (McINTYRE)
      Appellate Government Counsel