**UNITED STATES**

v.

**Airman First Class Cynthia Y. WILLIAMS, FR432–65–1469, United States Air Force.**

**ACM S29325.**

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 13 Nov. 1996.

Decided 29 May 1997.

Appellate Counsel for Appellant: Lieutenant Colonel Kim L. Sheffield and Captain Michael L. McIntyre.

Appellate Counsel for the United States: Colonel Theodore J. Fink, Lieutenant Colonel Michael J. Breslin, and Captain Steven D. Dubriske.

Before PEARSON, MORGAN, C.H., II, and MORGAN, J.H., Appellate Military Judges.

## OPINION OF THE COURT

MORGAN, C.H., II, Judge:

On November 13, 1996, appellant was convicted pursuant to her guilty pleas of divers uses of marijuana over a seven month period, and writing 5 dishonored checks totalling $850 in five days. The military judge, sitting alone as a special court-martial, sentenced her to a bad-conduct discharge, confinement for 45 days, and reduction to airman basic, a sentence coinciding with appellant's pretrial agreement which the convening authority approved without modification.

On April 1, 1996, legislative amendments to the Uniform Code of Military Justice (UCMJ), which amended Article 57, UCMJ, 10 U.S.C. § 857, and added Article 58b, UCMJ, 10 U.S.C. § 858b, became effective. We have previously disposed of *ex post facto* attacks on those amendments in *United States v. Pedrazoli*, 45 M.J. 567 (A.F.Ct. Crim.App.1997). In addition to asking us to overrule *Pedrazoli*, appellant mounts a new attack from another flank—that the amend-

ments, particularly Article 58b, deprived her of her pay in violation of the Due Process Clause of the Fifth Amendment to the Constitution. Finding that argument to be completely without merit, and declining the invitation to overrule ourselves in *Pedrazoli*, we affirm.

We begin by acknowledging some confusion as to what exactly appellant is arguing. Undeniably, the Supreme Court has held that an accused in a special court-martial is entitled to the due process of law guaranteed by the Fifth Amendment. *Middendorf v. Henry*, 425 U.S. 25, 43, 96 S.Ct. 1281, 1291–92, 47 L.Ed.2d 556 (1976). But in determining just what process is "due," the Supreme Court has given particular deference to the determinations of Congress, made under its authority to regulate the land and naval forces. U.S. CONST., ART. I, § 8; *Weiss v. United States*, 510 U.S. 163, 177, 114 S.Ct. 752, 760–61, 127 L.Ed.2d 1 (1994). Harkening back to an uninterrupted line of cases articulating this standard of review, the Supreme Court recently explained:

> [T]he tests and limitations of due process may differ because of the military context. The difference arises from the fact that the Constitution contemplates that Congress has "plenary control over rights, duties, and responsibilities in the framework of the Military Establishment, including regulations, procedures, and remedies related to military discipline." Judicial deference thus is "at its apogee" when reviewing congressional decisionmaking in this area. Our deference extends to rules relating to the rights of servicemembers: "Congress has primary responsibility for the delicate task of balancing the rights of servicemen against the needs of the military.... [W]e have adhered to this principle of deference in a variety of contexts where, as here, the constitutional rights of servicemen were implicated."

*Weiss*, 510 U.S. at 177, 114 S.Ct. at 760–61 (citations omitted).

Coupled with this deference to Congress' power in the realm of military justice and discipline is the Supreme Court's acknowledgement of Congress' near plenary authority respecting military pay. *See Bell v. United States*, 366 U.S. 393, 81 S.Ct. 1230, 6 L.Ed.2d 365 (1961); *United States v. Dickerson*, 310 U.S. 554, 60 S.Ct. 1034, 84 L.Ed. 1356 (1940). "No one disputes that Congress may prospectively reduce the pay of members of the Armed Forces, even if that reduction deprived members of benefits they had expected to be able to earn." *United States v. Larionoff*, 431 U.S. 864, 879, 97 S.Ct. 2150, 2159, 53 L.Ed.2d 48 (1977). We have no doubt but that Congress could, constitutionally, decide that no servicemember, once convicted by a court-martial and either facing a punitive discharge, or serving confinement, should be paid. *See Pedrazoli*, 45 M.J. at 573.

■ Appellant attempts to extricate herself from the *Bell–Larionoff* line of cases by arguing that her forfeitures, which began 14 days after her conviction by operation of Article 57, amount to a taking of property already accrued. This is clearly disingenuous. Even if we assume (although doubting) that the first forfeiture took place against appellant's pay for the 14 day period following her conviction, the operative point in time for evaluating prospectivity is the *conviction*. Nothing appellant had earned or accrued before her conviction was taken. We are therefore hard put to understand the intended import of appellant's declaration that "Article 58b did, however, take away, without due process of law, pay appellant had earned and accrued *after* her court-martial." If we decode the confusing juxtaposition of verb tenses, what appellant seems to be saying is that a court-martial does not supply adequate due process to warrant the forfeiture of pay, even where that forfeiture takes place after, and as a result of, the conviction.

An earlier portion of appellant's brief reinforces this construction of her argument—that the court-martial, including the sentencing hearing, is not enough. She declares "Article 58b does not contain any procedures affording a servicemember an opportunity to be heard before a punishment under the UCMJ, forfeitures of pay, are taken from him or her. The court-martial in appellant's case was insufficient due process." From this we infer appellant would have us decide that the Due Process Clause requires there

822

be discrete notice and hearing before the government may implement Article 58b and 57 as to any convicted accused. That dog won't hunt. Neither Article 57 nor 58b is tripped until an accused is convicted by a special or general court-martial. Consequently, analysis of the adequacy of procedural due process with respect to the operation of those articles cannot be decoupled from the court-martial process itself.

Appellant's analysis is understandably led astray by her reliance on *United States v. Sumrall,* 45 M.J. 207 (1996). In that case the Court analyzed the potential loss of retirement, associated with the adjudication of a punitive discharge, in due process terms. Since loss of retirement was not itself a possible punishment under the UCMJ, and thus was neither instructed upon nor the subject of formal notice to an accused, the Court had to struggle somewhat connecting the procedural due process obtaining in a court-martial to the Secretarial decision to retire, or not to retire, a convicted accused. It assumed, without deciding, that Sumrall had standing, even while conceding that "a substantial question exists whether he has a sufficient property interest at the present time for purposes of a Due Process Clause claim." *Sumrall,* 45 M.J. at 209.

Standing, or the showing of actual injury, is the *sine qua non* of constitutional jurisprudence. *See, e.g., Lewis v. Casey,* — U.S. —, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). It is, in fact, jurisdictional. *United States v. Hays,* 515 U.S. 737, 115 S.Ct. 2431, 132 L.Ed.2d 635 (1995). Insisting upon a thorough demonstration of standing is much more than a point of constitutional etiquette; it has the salutary purpose of preventing courts of law from undertaking tasks assigned to the political branches. *Allen v. Wright,* 468 U.S. 737, 750–52, 104 S.Ct. 3315, 3324–25, 82 L.Ed.2d 556 (1984).

In Sumrall's case, his questionable standing complicated what otherwise would have been a straightforward due process analysis. We have no such difficulty here. Appellant clearly has standing to make the argument that she does. No one disputes that Articles 57 and 58b applied to her, and that the timing of her reduction in grade and her entitlement to pay were affected to her disadvantage. But that does not further her due process argument, for her standing is conferred upon her precisely because of the inseverable connection between the operation of Articles 57 and 58b and her court-martial conviction. Unless there is some due process infirmity in her court-martial itself, the application of Articles 57 and 58b, following upon and directly arising from her court-martial conviction, passes constitutional muster. Unfortunately for her argument, appellant identifies no particular procedural defect in her trial, except insofar as she complains that the military judge never informed or discussed with her the possible effects of the two recent enactments.

■ It is true that the military judge did not specifically apprise appellant of how the amendments to Articles 57 and 58b might affect her. Neither did he tell her of the effect of the bad-conduct discharge and/or her conviction on her ability to hold public office, vote, obtain veterans' benefits, re-enter the military, or shop in the commissary or base exchange. He was not required to do so. He was required to, and did, advise her of the jurisdictional limitations of a special court-martial sentence, including the possibility that she could forfeit up to two-thirds pay and be reduced to the grade of airman basic as a result of her conviction.

■ Appellant's point of the military judge's failure to advise her of the implications of the two UCMJ articles at issue is better suited to the argument that her guilty plea was improvident—an argument she does not make, but which merits discussion in view of our responsibilities under Article 66(c). Although a closer question than the Due Process claim, we are persuaded that a military judge need not before accepting an otherwise provident plea advise an accused of the direct and indirect consequences of all of the possible UCMJ punishments. *Cf. United States v. Weatherford,* 42 C.M.R. 26, 1970 WL 6969 (C.M.A.1970) (accused must be fully informed of implications of punitive discharge before counsel may argue in favor of same); DA PAM 27–9, *Military Judges' Benchbook,* p. 91 (30 September 1996) (military judge to ensure accused knowingly and intelligently

agrees with counsel's argument in favor of punitive discharge). In part, this is because Articles 57 and 58b, like Article 58a, 10 U.S.C. § 858a, are not themselves part of the punishment, but operate in consequence of a given punishment. *Pedrazoli*, 45 M.J. at 574, *citing United States v. Powell*, 30 C.M.R. 288, 289, 1961 WL 4439 (C.M.A.1961).

Nothing, of course, prohibits a military judge from instructing on the operation of Articles 57, 58a, and 58b, as circumstances may advise. For our purposes, however, it was sufficient "notice" to appellant, if that is the correct term, that at the time of her trial the legislative amendments to both Articles were in the books.

Appellant's contentions being without merit, the findings and sentence are correct in law and in fact, and the same are hereby

AFFIRMED.

Senior Judge PEARSON and Judge J.H. MORGAN concur.