UNITED STATES, Appellee,

v.

Jerry POLK, Master Sergeant
U.S. Army, Appellant.

No. 96–1052.
Crim.App. No. 9400634.

U.S. Court of Appeals for
the Armed Forces.

Argued March 4, 1997.

Decided Sept. 12, 1997.

For Appellant: *Captain Thomas Jay Barrett* (argued); *Lieutenant Colonel Michael L. Walters* and *Major Leslie A. Nepper* (on brief); *Captain John M. Head.*

For Appellee: *Captain Mary E. Braisted* (argued); *Colonel John M. Smith, Lieutenant Colonel Eva M. Novak* and *Captain Joanne P. Tetreault* (on brief); *Captain Nancy A. Nollman.*

*Opinion of the Court*

SULLIVAN, Judge:

During March and April of 1994, appellant was tried by a military judge sitting alone as a general court-martial at Fort Stewart, Georgia. Contrary to his pleas, he was found guilty of absence without leave, larceny, wrongful appropriation (10 specifications), making a bad check, bigamy, wrongful cohabitation, and dishonorable failure to pay a just debt (10 specifications), in violation of Articles 86, 121, 123a, and 134, Uniform Code of Military Justice, 10 USC §§ 886, 921, 923a, and 934, respectively. Pursuant to his pleas, he was found guilty of another bad-check offense, in violation of Article 123a. On April 19, 1994, he was sentenced by the

judge to a bad-conduct discharge, confinement for 14 months, and reduction to pay grade E–1.

On June 17, 1994, the convening authority approved the sentence. On April 30, 1996, the United States Army Court of Criminal Appeals issued an unpublished opinion in this case. It set aside and dismissed 8 of the specifications of wrongful appropriation, 1 bad-check specification, bigamy, and 4 specifications of dishonorable failure to pay a just debt. It affirmed his remaining convictions for absence without leave, larceny, wrongful appropriation, making a bad check, wrongful cohabitation, and dishonorable failure to pay a just debt (6 specifications). Finally, on reassessment, the appellate court below affirmed the approved sentence.

On October 28, 1996, this Court granted review on the following issues:

I

WHETHER THE ARMY COURT ERRED IN AFFIRMING THE FINDINGS REGARDING SPECIFICATION 10 OF ADDITIONAL CHARGE VI WHERE THE EVIDENCE AT TRIAL ONLY DEMONSTRATED THE AMOUNT OF TIME AND AMOUNT OF NON–PAYMENT OF A DEBT, AND WHERE THE EVIDENCE INDICATES NO ATTEMPTED DECEIT, EVASION, FALSE PROMISE, OR INDIFFERENCE TOWARDS THE DEBT BY APPELLANT; THUS, THE EVIDENCE IS INSUFFICIENT AS A MATTER OF LAW TO SUSTAIN FINDINGS OF GUILT BEYOND A REASONABLE DOUBT THAT APPELLANT'S FAILURE TO MAKE TIMELY RENTAL PAYMENTS WAS A DISHONORABLE FAILURE TO PAY A JUST DEBT.

II

WHETHER THE EFFECT OF THE SENTENCE TO A BAD–CONDUCT DISCHARGE VIOLATES THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE CONSTITUTION.

We hold that the evidence of record is legally sufficient to support the challenged finding of guilty to a dishonorable failure to pay a just debt, *i.e.,* apartment rent. *See generally Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2788, 61 L.Ed.2d 560 (1979). The second issue we resolve against appellant on the basis of the decision of this Court in *United States v. Sumrall,* 45 MJ 207 (1996).

Appellant was found guilty, *inter alia,* of the following offense at his court-martial:

Specification 10: In that Master Sergeant Jerry Polk, .... being indebted to Homecorp Management also known as Turtle Creek Apartments in the sum in excess of $600.00 for rent, late fees, and damages to an apartment he rented, which amount became due and payable on or about 9 December 1993, did at Savannah, Georgia, from 9 December 1993 to 25 February 1994, dishonorably fail to pay said debt.

The evidence in this case shows that appellant failed to pay his rent for the month of November 1993.

**Miss Bonnie Nelson** was called as a witness for the prosecution, was sworn, and testified as follows:

*DIRECT EXAMINATION*

Questions by the Prosecution:

Q. Are you Bonnie Nelson, currently employed by the Home Cor—Incorporated, also known as Turtle Creek Apartments located in Savannah, Georgia?

A. Yes.

Q. What is your job title?

A. Community Manager.

Q. What exactly do you do?

A. I keep all the records of all the residents' files. I manage the property, make sure I collect rent, file any kind of warrants that need to be filed if people don't pay rent.

Q. How long have you been in that position?

A. Since—manager since July of '93.

* * *

Q. Did you ever—did your company ever have any problems regarding the apartment?

A. The apartment itself?

Q. With the renting of the apartment to the accused.

A. Rent—paying of rent, yes.

Q. Will you please recount for us what those problems were?

A. Constantly delinquent. I had to file two dispositionary[1] warrants on the gentleman.

Q. Do you remember when those were filed?

A. The first one wasn't filed by me; it was filed by the previous manager and that was either May or June of '93, and the last one was filed by me in November of '93.

Q. Why were those filed?

A. Nonpayment of rent.

Q. Will you please recount for us what occurred in July of 1993?

A. Payment of rent wise?

Q. Yes, ma'am.

A. [Examining Prosecution Exhibit 20.] I'll have to look it up and make sure I recall right—correctly. According to the records, he paid—on the 1st he paid a cash payment of $160.00. He had at that time $665.00 delinquent. He paid $160.00 and then on the 7th he brought me a money order for $200.00 and a check for 260. The check was returned to me for closed account on the 13th.

Q. Now, have you had experience with receiving checks back from the bank?

A. Yes.

Q. Do you recognize the stamps that are placed upon those?

A. Yes.

Q. What was on that check that was returned to you?

A. "Closed account."

Q. What date did you receive that check back?

A. According to the records, the 13th.

Q. What did you do?

A. I contacted Mr. Polk through what we call a "NSF letter."

Q. Would you please explain what that is?

A. It's a letter stating that the check was returned and that the money is due back along with a dishonored check fee of $20.00. It's placed upon their door.

Q. What happened after that then?

A. He came in and replaced it around the 16th.

Q. Did he pay off the entire amount?

A. Not until—he paid off the whole $260.00. He still had $111.00 delinquent. He paid that off around the 21st.

Q. *Now, you just testified that you had to file some sort of paperwork in November, is that correct?*

A. *Right.*

Q. *What was that again?*

A. *It's a dispositionary [sic] warrant.*

Q. Why was that done?

A. Nonpayment of rent.

Q. What month's rent had he not paid?

A. November's.

Q. Will you please explain to me how you go about doing that?

A. *They get several warnings placed upon their door telling them that their rent's delinquent and they need to pay it along with late fees. After a certain point if it's not paid, I go down to the courthouse, I file the warrant with the sheriff—with the magistrate court, and the sheriff delivers it upon their door. That's for nonpayment.*

Q. *And is that what you did in November?*

A. *Yes.*

Q. What happened then?

A. *I never heard from Mr. Polk or Mrs. Polk. Around the—after the door is tagged with the dispositionary [sic] warrant, they have 7 days to either answer to the court or pay me in full, which he did not do either, and so*

---

1. Should be dispossessory.

after the 7 days were up, I went back down to the courthouse and filed an eviction with the sheriff's department.

Q. How much in back rent did he owe?

A. At that point?

Q. At that point?

A. [Examining Prosecution Exhibit 20.] On the dispositionary [sic] it has $574.00.

Q. You said you went down and you filed the eviction.

A. And then usually I tack on the $25.00 charge for the eviction fee.

Q. Then what happened?

A. When I went down—wait a minute—I didn't even get to file the eviction cause *when I went to the apartment to tell him I was going to file, the apartment was vacant.*

Q. *And when was this?*

A. *On December 9th.*

Q. *What was the condition of the apartment?*

A. *It was very dirty.* The carpet—it had brand new carpet in it—it was stained, had bleach stains throughout the living room and it was very, very dirty carpet—the stove, the refrigerator—very dirty.

Q. Now, did you calculate the sums of the damage that had occurred to the apartment?

A. I did and then I had to have a carpet person come in and give me an estimate on it. He came and he gave me an estimate on the carpet, and then it turned out it even cost more than that. So, I had to recalculate the damages.

Q. Approximately how much back rent does—did the accused owe on this account?

A. For total of November and then the portion of December to the night when I found it vacant, and late fees, and court costs, it was $728.89. Then he had a security deposit of 75 that was applied towards it which left him with 653.89 in rent.

Q. And how much were the damages?

A. 628.60.

Q. *Has the accused paid any of these sums?*

A. *No.*

Q. Has he attempted to pay any of these sums?

A. *It's at a collection agency and when I talked to them, they said there had been no attempt.*

Q. Were you and your colleagues surprised about the problems?

A. Yes.

Q. Why?

A. I had never really had any major problems with the military personnel before.

Q. How did it affect your perception?

A. I'm much more cautious now of renting to military.

Q. Can you tell us what the condition of that carpet was when you originally rented the apartment?

A. It was brand new.

TC: No further questions, Your Honor.

(Emphasis added.)

— — —

I

Appellant asserts that the evidence in his case was not legally sufficient to sustain one of his convictions for dishonorably failing to pay a just debt. He argues that the record shows only a failure to make timely rental payments and that such failure was caused by his "receiving no pay." Final Brief at 4. Relying heavily on this Court's decision in *United States v. Gardner*, 35 MJ 300 (1992), he concludes that his conviction must be set aside. We hold that appellant's case is not *Gardner*, and affirm his conviction of this offense.

Article 134 prohibits "all disorders and neglects to the prejudice of good order and discipline in the armed forces, all conduct of a nature to bring discredit upon the armed forces, and crimes and offenses not capital...." The President in the Manual for

Courts–Martial has delineated various types of conduct which over the years have been recognized in military law as violations of Article 134. Para. 71, Part IV, Manual for Courts–Martial, United States, 1984, states:

### 71. Article 134—(Debt, dishonorably failing to pay)

\* \* \*

b. Elements.

(1) That the accused was indebted to a certain person or entity in a certain sum;

(2) That this debt became due and payable on or about a certain date;

(3) That while the debt was still due and payable the accused dishonorably failed to pay this debt; and

(4) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

The President has further summarized military law concerning this offense as follows:

c. *Explanation.* More than negligence in nonpayment is necessary. *The failure to pay must be characterized by deceit, evasion, false promises, or other distinctly culpable circumstances indicating a deliberate nonpayment or grossly indifferent attitude toward one's just obligations.* For a debt to form the basis of this offense, the accused must not have had a defense, or an equivalent offset or counterclaim, either in fact or according to the accused's belief, at the time alleged. The offense should not be charged if there was a genuine dispute between the parties as to the facts or law relating to the debt which would affect the obligation of the accused to pay. The offense is not committed if the creditor or creditors involved are satisfied with the conduct of the debtor with respect to payment. The length of the period of nonpayment and any denial of indebtedness which the accused may have made may tend to prove that the accused's conduct was dishonorable, but the court-martial may convict only if it finds from all of the evidence that the conduct was in fact dishonorable.

Para. 71c, Part IV (emphasis added).

■ The Uniform Code of Military Justice provides that the factfinder at a court-martial (either a military judge or court members) must determine guilt based on evidence presented at trial. *See* Art. 51(c)(1), UCMJ, 10 USC § 851(c)(1). With respect to a failure-to-pay offense under Article 134, the factfinder must find dishonor in accordance with the legal principles noted above. We, as an appellate court of law, do not subsequently decide this question *de novo.* Art. 67(c), UCMJ, 10 USC § 867(c)(1994). Instead, we determine whether there was sufficient evidence in the record of trial from which the factfinder could find this element of the offense beyond a reasonable doubt. *See generally United States v. Hart,* 25 MJ 143, 146 (CMA 1987), citing *Jackson v. Virginia, supra.*

■ The particular question before the military judge was whether appellant's failure to pay his one month's rent was "characterized by deceit, evasion, false promises, or other distinctly culpable circumstances indicating a deliberate nonpayment or grossly indifferent attitude toward one's just obligations." In this regard, we initially note that the evidence was uncontroverted that at the time of trial in April 1994, appellant had not paid this debt or made any arrangements for partial payment. Accordingly, this is not an untimely payment case like *Gardner, supra* at 301, and such evidence indicates a "grossly indifferent attitude" toward his obligation.

In addition, we note that evidence was admitted showing that the charged offense was not the first time appellant failed to make a timely rent payment to the lessor of this apartment. Four months earlier, he made an untimely rent payment with a check that was dishonored, requiring additional untimely payments by him. Moreover, the record shows that he failed to even contact the rental agent after receiving both formal and informal notice that his rent was overdue in November 1993. Finally, and most importantly, evidence in the record shows that he

surreptitiously vacated the apartment without paying the rent due and without cleaning or repairing the apartment.[2] In view of this evidence, a reasonable factfinder could find that appellant's failure to pay rent was in bad faith and thus punishable as a service discredit under Article 134. *See United States v. Cummins,* 9 USCMA 669, 673, 26 CMR 449, 453 (1958); *cf. United States v. Kirksey,* 6 USCMA 556, 558–61, 20 CMR 272, 274–77 (1955).

## II

Turning to the second granted issue, we also hold that it is without merit. Appellant had over 23 years in service at the time of trial and thus was eligible to apply for retirement. He advised the military judge of this fact in his unsworn statement. Appellant did not proffer evidence of loss of retirement benefits at his court-martial, but his defense counsel reminded the judge of the enormity of the financial loss appellant was facing if discharged ("[i]f we took half of his base pay ... and we multiply that times 360 months, 30 years, that would be $450,000.00 without interest and again, that would be a pretty severe penalty."). We see no Fifth Amendment violation of due process in these circumstances. *See generally United States v. Sumrall, supra.*

The decision of the United States Army Court of Criminal Appeals is affirmed.

Chief Judge COX and Judges CRAWFORD, GIERKE, and EFFRON concur.

---

2. Appellant disputes the government evidence that the apartment was not clean and that he was responsible for any damage to it.