UNITED STATES, Appellee

v.

Bruce A. LUSTER, Staff Sergeant
U. S. Air Force, Appellant

No. 00-0403

Crim. App. No. S29525

United States Court of Appeals for the Armed Forces

Argued November 14, 2000

Decided June 7, 2001

SULLIVAN, J., delivered the opinion of the Court, in which
GIERKE, EFFRON, and BAKER, JJ., joined.  CRAWFORD, C.J., filed a
dissenting opinion.

## Counsel

For Appellant:  Captain Shelly W. Schools (argued); Lieutenant Colonel Timothy
    W. Murphy, Lieutenant Colonel James R. Wise, and Captain Patience E.
    Schermer (on brief); Colonel Jeanne M. Rueth.


For Appellee:  Lieutenant Colonel Michael E. Savage (USAFR) (argued); Colonel
    Anthony P. Dattilo and Lieutenant Colonel Ronald A. Rodgers (on brief);
    Lieutenant Colonel William B. Smith (USAFR) and Major Lance B. Sigmon.



Military Judge:  Mary M. Boone


THIS OPINION IS SUBJECT TO EDITORIAL CORRECTION BEFORE PUBLICATION.

United States v. Luster, 00-0403/AF

Judge SULLIVAN delivered the opinion of the Court.

Appellant, a staff sergeant (E-5) in the Air Force, was tried by a special court-martial composed of officer and enlisted members at Cannon Air Force Base, New Mexico. He pleaded guilty to a single specification of wrongfully using marijuana, in violation of Article 112a, Uniform Code of Military Justice, 10 USC § 912a. On February 26, 1998, he was sentenced to a bad-conduct discharge and reduction to the grade of Airman Basic (E-1). On March 30, 1998, the convening authority approved this sentence. The Court of Criminal Appeals affirmed. (ACM S29523 (A.F. Ct. Crim. App., 4 Feb 2000)).

On July 31, 2000, this Court granted review on the following question of law:

> WHETHER THE MILITARY JUDGE ERRED WHEN SHE
> PROHIBITED APPELLANT FROM PRESENTING
> EVIDENCE OF THE EFFECTS A PUNITIVE
> DISCHARGE WOULD HAVE ON HIS RETIREMENT
> BENEFITS.

We hold that the military judge prejudicially erred when she determined that defense sentencing evidence on appellant's expected retirement pay was irrelevant and too confusing for admission at his court-martial. See United States v. Becker, 46 MJ 141 (1997); see also United States v. Loya, 49 MJ 104 (1998).

At the time of appellant's trial he had served 18 years and 3 months in the Air Force. The prosecution made a motion in limine

to prevent the defense from offering evidence of the financial effects a bad-conduct discharge could have on his expected retirement benefits.  The defense acknowledged that it intended to introduce such evidence in this case.

Defense Exhibit E for Identification was a "Memorandum for ADC" dated 26 Feb 98, and signed by Technical Sergeant Donna E. Maler, Superintendent, Relocations.  It addressed the subject of "Retirement Pay Calculations" for appellant.  It estimated that appellant would receive $901.00 pay per month if he retired as an E-5, his current pay scale; $725.00 as an E-4; $622.00 as an E-3; $525.00 as an E-2; and $468.00 as an E-1.  These estimates were based on the 1998 pay scale and were before taxes.

Assistant trial counsel preemptively argued that such evidence should not be admitted.  He said:

> Your Honor, the Government objects to
> Defense Exhibit E on the basis of Military
> Rule of Evidence 403, holding that such
> evidence is so collateral as to be
> confusing to the members, and such
> confusion substantially outweighs whatever
> probative value it may have, if any, under
> Rule 402.  Last June the Court of Appeals
> for the Armed Forces decided two cases;
> United States v. Greaves and United States
> v. Becker, which clarified the 1989 United
> States v. Henderson case, by holding that
> there is no per se irrelevance rule for
> this kind of evidence, if retirement
> benefits are not vested.  Each case must
> be decided on its own facts and the
> decision rests within the discretion of
> the military judge.  Greaves was
> distinguished from Henderson based on the
> fact that the accused was eligible for

retirement in only 2 months at the time of the trial.  And the court said that he was, "Perilously close to retirement." Henderson was 3 years away at the time of his trial.  Becker was also within weeks of becoming retirement eligible and the court also said, "Appellant was literally knocking at retirement's door at the time of his court-martial."  Sergeant Luster, on the other hand, is around 2 years from retirement.  I think the actual figure is 21 months.  He retires 9 November '99, is his retirement date.  And furthermore, he's much farther away than in Greaves and Becker, and furthermore, the offense he committed was last September and he wasn't even inside of 2 years when the offense was committed.  The government feels that he does not meet the standard of what is perilously close to retirement, or knocking at the door.  And the Government believes the case is factually much closer to Henderson than to either Greaves or Becker and that's the basis for our motion, your Honor.

Defense counsel argued that such evidence should be admitted in this case.  He said:

Your Honor, the defense believes that it is incredibly relevant for the members to have an idea of what a punitive discharge would mean to Staff Sergeant Luster.  As you know, as in United States v. Becker, it was ruled that the military judge, the trial judge, erred when he refused to admit defense mitigation evidence of the projected dollar amount of retirement income which the accused in that case might be denied if a punitive discharge had been adjudicated.  There is really a two-prong test and as the prosecution has alluded to, a lot has to do with how close is the accused to retirement.  In this particular case, Staff Sergeant Luster is a little under 21 months away from retirement.  And it's the military judge's discretion as to how close to retirement is that really.  It is a lot less than the 3 years in the case that the prosecution

4

talked about.  And the second prong, of course, would be, does Staff Sergeant Luster have to reenlist to reach retirement.  And that is something that is talked about in United States v. Becker, where Becker did not have to reenlist to retire.  And in this particular case, if you take a look at the personal data sheet, Staff Sergeant Luster would be eligible for retirement on 9 November '99, when his current enlistment expires.  Based on the case law, and when you take a closer look at that, the defense submits that Staff Sergeant Luster is situated a lot closer to Becker in that he will be allowed to retire at the end of his current enlistment and after over 18 years of service in the United States Air Force, just under 21 months away.  The defense would argue that that is perilously close to retirement, where he is in his last enlistment.  He doesn't have to reenlist to retire and the members should have an idea of just how serious a punitive discharge would be in this case.  As the Becker court stated, the sentencing authority should, in this particular case, should determine that the accused richly deserves a punitive discharge and also know what the loss of benefits of the substantial value over the remainder of his lifetime would mean.  The sentencing authority shouldn't have to make that decision, however, while merely speculating about the significant impact of a punitive discharge.  If the members were not allowed access to this type of data that you have in front of you, that the Military Personnel Flight has provided, the members would merely be guessing as to what type of financial penalty a punitive discharge or reduction in rank would have in Staff Sergeant Luster's case.  And, therefore, we ask that you do allow that evidence to go forward.  Thank you, your Honor.

The prosecution responded:

> Your Honor, I would, first of all, say
> that reenlistment is just a factor to be
> considered and if you think about it
> logically, a person who is 3 years out,
> like Henderson, may not have to reenlist
> anyway, you know, before they retire as
> well, because you can have a 4-year
> enlistment.  So, the thing that is
> critical is the length of time until
> retirement.  It's 2 years away, you know;
> it's far too long to be confusing the
> members about the effects of this
> retirement.  And on that basis we think
> it's just too confusing.
>
> ATC: I have here Becker, Greaves, and
> Henderson for you to review copies of, if
> you would like.
>
> MJ:  That would be good.  I need to review
> them again.  I have looked at them before,
> but not recently.

(Emphasis added.)

The military judge subsequently granted the prosecution's motion in limine.  She said:

> [T]he court's decision is, I'm not going
> to allow those to be admitted.  I will
> allow counsel to talk generally about
> someone with 18 years of service and to
> question them in terms of voir dire about
> some of that.  And that they clearly
> understand that a bad-conduct discharge
> would mean that he couldn't serve out the
> remaining 21 months of his enlistment and,
> therefore, be eligible.  So, I will allow
> all of that and I can clarify either in
> the instruction to the members about
> punitive discharge.  I could even add, if
> counsel would request, although, and I
> know members do have these questions, that
> that would include the inability -- or the
> -- that would preclude the accused from

6

serving out the remainder of his enlistment and, therefore, becoming eligible for retirement benefits, I could clarify in instructions. I don't have a problem with that, I think that makes it clear if there are any questions. And then if they come back with any questions, like I've had, about reductions and impacts on ability to retire, then we take those as they come. Part of it is because it's almost 2 years, and in this particular type of offense, wrongful use of marijuana, and again, I know we don't instruct members on this either, the AFI 36-3208 clearly provides that, unless there is a waiver, and there could be, and I don't know if the commander or whoever would support that. In fact, unless those criteria are met, and they could decide it's experimental and it fits in that criteria, a discharge action has to be initiated. And it does talk about members in the 16 to 20 year getting lengthy service consideration, and it has to go to a specific headquarters, and it lists it in the regulation, which I don't need to refer, which does tend to state that there is lengthy [service] consideration. But if I look at this case, unlike the other cases where we're talking 2 or 3 months from retirement where the accused would, therefore, be eligible and nothing would preclude an accused from being retired, in this case, if the unit decided to initiate action and the accused didn't get a bad-conduct discharge, there would be sufficient time for that to go through that process, if the accused went to a board and there was a decision to discharge him, to potentially lose his benefits in that route. Therefore, when I consider all of these in this particular case with that length of the 21 months, I do think it's not, if you will, collateral, but it becomes more confusing as to what he be eligible for, at what time, and with that being that length of time, where a unit would still be able to potentially initiate action, he would be discharged anyway and not get them. And the purpose is for them to determine whether a bad-conduct discharge is warranted. I would be willing, however, to address, as I said, in my instruction

> to make it very clear to the members that when I talk about punitive discharge and bad-conduct to add that wording that I talked about so that it's really clear and they understand that it would make him ineligible to serve the remainder of his enlistment and, therefore, become eligible in 21 months to potential retirement benefits. <u>But to go into the specifics of what those are, I think, at this point, it's irrelevant because it's so far out.</u> But again, if they would ask a question about high year tenure or anything like that, whether he had to be discharged, then I think we can address it and we have the document that provides us the information. So, that would be my ruling. I'm not going to allow those in, but if the defense requests, I will add that to my instruction to make it very clear.
>
> DC: At this time, the defense would request that type of instruction, your Honor.
>
> MJ: Okay. Are we ready to proceed with <u>voir</u> <u>dire</u>?

(Emphasis added.)

The Court of Criminal Appeals held that the military judge's ruling concerning the loss of retirement benefits did not prejudice appellant, stating

> Although the trial judge granted the government motion and refused to admit evidence of the appellant's potential retirement benefits, she allowed counsel to <u>voir</u> <u>dire</u> the members about the appellant's 18 years of service; allowed him to argue the appellant's lengthy service during his sentencing argument; and the appellant mentioned the same during his unsworn statement. At the appellant's request, the trial judge tailored an instruction on the effects of a punitive discharge on the appellant's yet-as-earned retirement benefits to the

> facts and circumstances of his case. She
> instructed the members as follows: "This
> court may adjudge a bad-conduct discharge.
> Such a discharge deprives one of
> substantially all benefits administered by
> the Department of Veterans Affairs and the
> Air Force establishment and will deny the
> accused in this case the opportunity to
> serve the remainder of his 21-month
> enlistment and, therefore, preclude the
> eligibility for retirement benefits."

Unpub. op. at 2 (emphasis added).


___ ___ ___


The first question before this Court is whether the military judge erred in excluding evidence of appellant's estimated retirement pay at various ranks if he was not punitively discharged at this court-martial. In United States v. Becker, 46 MJ 141, we held such evidence was clearly admissible under RCM 1001(c)(1)(B), Manual for Courts-Martial, United States, 1984, 1/ where the accused is "literally knocking at retirement's door at the time of his court-martial" and he requests "an opportunity to present" such evidence and he has "such evidence to present." We rejected a per se rule precluding such defense evidence simply because an accused was not actually retirement eligible at the time of his court-martial. Id. at 144 (quoting Court of Criminal Appeals' Judge Johnston's separate opinion). The clear import of this and related decisions concerning expected retirement pay is that it is a critical matter of which the members should be

---

1 "Matter in mitigation of an offense is introduced to lessen the punishment to be adjudged by the court-martial . . . ."

informed in certain cases before they decide to impose a punitive discharge.  See generally United States v. Sumrall, 45 MJ 207, 209 (1996); United States v. Griffin, 25 MJ 423, 424 (CMA 1988) (loss of retirement benefits "often [is] the single most important sentencing matter to that accused and the sentencing authority").

Our decisions, however, do provide a military judge with a certain amount of discretion in determining whether to allow evidence regarding the loss of retirement benefits in a particular case.  See United States v. Greaves, 46 MJ 133, 139 (1997).  The judge's decision should not be based solely on the number of months until an accused's retirement where other facts and circumstances indicate that the loss of these benefits is a significant issue in the case.  See United States v. Becker, supra at 144.  Here, appellant had 18 years and 3 months of military service and he was serving an enlistment which would normally result in his eligibility for retirement.  Cf. United States v. Henderson, 29 MJ 221, 222 (CMA 1989).  Moreover, the probability of retirement, but for a punitive discharge, was not otherwise shown by the Government to be remote, and the expected financial loss was substantial.  See United States v. Greaves, supra at 139; United States v. Sumrall, supra at 209.

The military judge, on her own initiative, rejected evidence of these facts and instead focused on the regulatory possibility that appellant would not be retired even if he was not punitively

discharged at this court-martial.  She noted appellant's potential for administrative separation for drug use under "AFI 36-3208" and the fact that the time remaining on his enlistment was sufficient to conduct an administrative discharge board.  She concluded that this circumstance rendered the whole matter of loss of retirement benefits too "confusing" to present to members and "irrelevant" because his retirement was not guaranteed.  See United States v. Luster, supra (CCA opinion at 2).

We disagree with the reasoning of the military judge.  She effectively established a guaranteed retirement standard (no possible regulatory impediment to retirement) before this evidence could be admitted.  Our case law has rejected per se rules of this type.  See United States v. Becker, 46 MJ at 143 (this Court rejects rule requiring strict retirement eligibility at time of trial).  Moreover, her conclusion concerning appellant's retirement was based on admitted speculation.  She conceded that administrative separation on this ground was not mandatory and the command could seek a waiver or meet certain regulatory criteria.  In addition, she admitted that there was no basis in the record for her to conclude that the command would or would not seek a regulatory waiver.  Finally, the members were fully capable of and responsible for determining this regulatory possibility and its import after a full presentation of evidence by both sides.  Cf. United States v. Perry, 48 MJ 197, 199 (1998).  In this light, we conclude that the military judge relied on erroneous legal principles in deciding to exclude the

proferred defense evidence.  See United States v. Travers, 25 MJ 61, 63 (CMA 1987) (abuse of discretion occurs where judge relies on erroneous legal principles).

The second question before us is whether appellant was materially prejudiced by the judge's erroneous decision to exclude this defense evidence.  Article 59(a), UCMJ, 10 USC § 859(a).  The exclusion of evidence of "the value of [an accused's] projected retirement" has been found to be prejudicial error where the servicemember had 19 years and 8 1/2 months of active service and had reliable evidence showing the projected loss.  See United States v. Becker, supra at 142.  Here, appellant had 18 years and 3 months of service and needed only to successfully complete his current enlistment to be eligible to retire.  He also had no record of prior convictions or non-judicial punishments (although he was not a perfect airman) and he had reliable evidence as to the projected loss of retirement income as a result of a punitive discharge.  In these circumstances, where the decision to award a punitive discharge was such a close call (see also United States v. Eversole, 53 MJ 132, 134 (2000)), we are "left in grave doubt" about the influence of the judge's error on the sentence.  See generally Kotteakos v. United States, 328 U.S. 750, 765 (1946).

The Court of Criminal Appeals nevertheless concluded that appellant was not materially prejudiced because "the members were not left 'largely unguided in a critical sentencing area.'"  It

relied on our decision in United States v. Greaves, 46 MJ at 138,

for this standard for reversal and held:

> The trial judge's ruling did not preclude
> the appellant from exercising his broad
> right to present mitigation evidence to
> the court-members during sentencing.
> Evidence in the record of trial could not
> be clearer that a punitive discharge would
> deny the appellant of [sic] his potential
> retirement benefits. Furthermore, we are
> confident that members chosen for court-
> martial duty under Article 25(d)(2), UCMJ,
> 10 USC § [8]25(d)(2) criteria are
> generally aware of the monetary effect
> resulting from the loss of retirement
> benefits.

Unpub. op. at 3. We disagree.


Our decision in Greaves, dealt with an instruction that the

members were not to consider the effect of a punitive discharge

on expected retirement pay, given in light of questions by the

members. It is clear that the members of this appellant's court-

martial were instructed properly by the military judge on this

issue. (A bad-conduct "discharge . . . will deny the accused in

this case the opportunity to serve the remainder of his 21-month

enlistment and, therefore, preclude the eligibility for

retirement benefits.") However, in Becker, decided the same day

as Greaves, we further held that an accused could also be

materially prejudiced if he was denied the right to present to

the members a detailed and comprehensive picture of his expected

13

financial loss to demonstrate the financial impact of a punitive discharge.  Becker, not Greaves, controls. 2

     In this light, the critical question is not whether the members generally understood that retirement benefits would be forfeited by a punitive discharge.  Instead, we must ask whether appellant was allowed to substantially present his particular sentencing case to the members on the financial impact of a punitive discharge.  See United States v. Loya, 49 MJ 104; see also United States v. Scheffer, 523 U.S. 303, 317 (1998).  In our view, appellant was  significantly disadvantaged when he was required to present a more general sentencing case relying on oblique references in voir-dire questions to the members and in counsel's argument.  See United States v. Becker and United States v. Sumrall, both supra; United States v. Henderson, 29 MJ at 223.  This disadvantage was exploited by trial counsel who in his closing argument asserted "that a punitive discharge . . . doesn't take your money away."  Accordingly, in view of all the circumstances of appellant's case, we find prejudicial error. See United States v. Becker, supra at 144.

     The decision of the United States Air Force Court of Criminal Appeals as to findings is affirmed and as to sentence is

---

2  We need not speculate whether the members of appellant's court-martial could infer the dollar amount of appellant's expected retirement loss from other evidence of appellant's pay at various pay grades presented at this court-martial for a different purpose.  It suffices to say that United States v. Becker, 46 MJ 141 (1997), comprehends a full and fair

reversed.  The sentence is set aside.  The record of trial is returned to the Judge Advocate General of the Air Force.  A rehearing on sentence may be ordered.

---

presentation of this critical information to the sentencing body, not after-the-fact speculation.

United States v. Luster, No. 00-0403/AF

CRAWFORD, Chief Judge (dissenting):

The sole issue in this case is whether the military judge abused her considerable discretion in refusing to admit a document that reflected sums appellant would receive at various levels between pay grades E-5 and E-1 if permitted to retire from the United States Air Force. Prior to rejecting this evidence (Defense Exhibit E for Identification), the military judge announced on the record that the evidence was irrelevant and posed a risk of confusing the members. Both are sound reasons for excluding evidence under the Military Rules of Evidence and case law. See Mil.R.Evid. 401, 402, and 403, Manual for Courts-Martial, United States (2000 ed.); United States v. Becker, 46 MJ 141 (1997). The majority concludes that the military judge "relied on erroneous legal principles" in rejecting the evidence and thus she abused her discretion. ___ MJ at (11). I disagree.

This Court's standard of review on the admission or exclusion of sentencing matters is highly deferential, reversing only for a clear abuse of discretion. See United States v. Zakaria, 38 MJ 280, 283 (1993). See also Becker, supra at 143; United States v. Loving, 41 MJ 213, 273 (1994), aff'd on other grounds, 517 U.S. 748 (1996). The term "abuse of discretion" has a variety of definitions. See S. Childress & M. Davis, Federal Standards of Review § 4.21 (3d ed. 1999). Definitions

of "abuse of discretion" from this Court have appropriately

fluctuated depending on the action being tested on review.

In United States v. Travers, 25 MJ 61, 62-63 (1987), we set

out this basic definition:

> An "abuse of discretion" exists where
> "reasons or rulings of the" military judge are
> "clearly untenable and ... deprive a party of a
> substantial right such as to amount to a denial
> of justice"; it "does not imply an improper
> motive, willful purpose, or intentional wrong."
> Guggenmos v. Guggenmos, 218 Neb. 746, 359 N.W.2d
> 87, 90 (1984), citing Pettegrew v. Pettegrew, 128
> Neb. 783, 260 N.W. 287 (1935).
> The "abuse of discretion" standard is a
> strict one and has been defined in United States
> v. Yoakum, 8 MJ 763 (ACMR 1980), aff'd on other
> grounds, 9 MJ 417 (CMA 1980), as follows:

> > To reverse for "an abuse of discretion
> > involves far more than a difference in ...
> > opinion....  The challenged action must ...
> > be found to be 'arbitrary, fanciful, clearly
> > unreasonable,' or 'clearly erroneous' in
> > order to be invalidated on appeal."

> Quoting United States v. Glenn, 473 F.2d 191, 196
> (D.C. Cir. 1972).

> "An abuse of discretion arises in cases in
> which the judge was controlled by some error of
> law or where the order, based upon factual, as
> distinguished from legal, conclusions, is without
> evidentiary support." Renney v. Dobbs House, Inc.,
> 275 S.C. 562, 274 S.E.2$^d$ 290, 291 (1981), citing
> Stewart v. Floyd, 274 S.C. 437, 265 S.E.2d 254 (1980).

Since Travers, this Court has taken the potpourri

of "abuse of discretion" definitions found therein and applied

them in different contexts.  In <u>United States v. Miller</u>, 47 MJ

352, 358 (1997), we tested denial of a continuance for

> "reasons or rulings [which] ... are clearly untenable and
> ... deprive a party of a substantial right such as to
> amount to a denial of justice"; [this] "does not imply an
> improper motive, willful purpose, or intentional wrong."

Yet, later in the same opinion we tested the denial of a defense

request to produce a witness based on "whether 'on the whole,'

denial of the defense witness was improper.'"  47 MJ at 359,

quoting <u>United States v. Ruth</u>, 46 MJ 1, 3 (1997).  In <u>Ruth</u>, we

said that "[t]he reviewing court should not set aside a judicial

action 'unless it has a definite and firm conviction that the

court below committed a clear error of judgment in the

conclusion it reached upon a weighing of the relevant factors.'"

(Citations omitted.)

In <u>United States v. Peterson</u>, 48 MJ 81 (1998), we tested

action on a motion to suppress by the standard that "[t]o

reverse for an abuse of discretion involves far more than a

difference in ... opinion.... The challenged action must ... be

found to be arbitrary, fanciful, clearly unreasonable, or

clearly erroneous in order to be invalidated on appeal."  <u>Id</u>. at

83 (internal quotation marks omitted)(citing <u>Travers</u>, 25 MJ at

62).  <u>Accord</u> <u>United States v. Johnson</u>, 49 MJ 467, 473 (1998) and

<u>United States v. Miller</u>, 46 MJ 63, 65 (1997) (evaluating a

military judge's discretion to admit evidence under Mil.R.Evid.

3

403); <u>United States v. Barron</u>, 52 MJ 1 (1999) (testing exercise of discretion in not disqualifying a previously qualified expert witness for improper action). On some occasions, the Court has reversed a judicial ruling without articulating an abuse-of-discretion standard under the facts of that case. <u>See</u>, <u>e.g.</u>, <u>United States v. Grill</u>, 48 MJ 131 (1998)(two dissenters found no abuse of discretion).

While the term "abuse of discretion" might be vexingly expansive, its definition cannot be exacting without unnecessarily curtailing "the broad powers" of the military judge at trial. <u>See</u> <u>United States v. Rosser</u>, 6 MJ 267, 271 (CMA 1979). I can find nothing in this military judge's ruling that convinces me that it was arbitrary, fanciful, clearly unreasonable, or untenable. Neither does the majority.

A military judge also abuses her discretion if she improperly applies legal principles when rejecting a piece of evidence. <u>See</u> <u>Becker</u>, 46 MJ at 143; <u>United States v. Campbell</u>, 41 MJ 177, 185 (CMA 1994); <u>United States v. Williams</u>, 37 MJ 352, 356 (CMA 1993). The majority's reliance on this abuse-of-discretion application falls of its own weight. <u>See</u> ___ MJ at <u>(6)</u> (quoting military judge's explanation for her ruling).

Before making her ruling, the military judge reviewed two recent cases from this Court -- <u>Becker</u>, and <u>United States v. Greaves</u>, 46 MJ 133 (1997). In <u>Becker</u>, a unanimous decision, we

4

held that "relevance of evidence of potential loss of retirement benefits depends upon the facts and circumstances of the individual accused's case." Id. at 143. The error in Becker was the military judge's misreading of United States v. Henderson, 29 MJ 221 (CMA 1989), and "per se exclud[ing] defense evidence of the estimated value of appellant's expected military retirement." 46 MJ at 144.

Greaves, also an unanimous opinion from this Court, found that the judge erred by instructing the members not to consider the impact of a punitive discharge on appellant's impending retirement eligibility, in light of two questions posed by court members.

Contrary to the views of the majority today, a military judge does not abuse her discretion so long as she does not adopt an iron clad, per se rule regarding evidence of retirement benefits (or loss thereof), or improperly answers questions related to retirement. To use Professor Rosenberg's analogy,[1] this Court has fenced off only a portion of the pasture land. So long as the military judge provided appropriate instructions and answers to retirement issues, and didn't restrict the retirement-benefit evidence of an accused "knocking on retirement's door," 46 MJ at 144 (19 years, 10 months in Greaves

---

[1] See M. Rosenberg, Judicial Discretion of the Trial Court, Viewed from Above, 22 Syracuse L. Rev. 635, 650 (1971).

-- 46 MJ at 134; 19 years, 8½ months in Becker -- id. at 142),[2] she was free to apply her discretion to any proffered evidence. As we have held, judges are "presumed to know and apply the law correctly." See, e.g., United States v. Raya, 45 MJ 251, 253 (1996). Here the judge was faced with the ticklish decision of admitting evidence that could mislead the members into thinking that appellant's retirement was a "sure thing," when she knew that Air Force regulations required a commander to initiate administrative action if there had been no discharge by a court-martial for drug use. The court members are presumed to have knowledge of this Air Force regulation as well. See United States v. Tolkach, 14 MJ 239 (CMA 1982). I am also confident that when these court members (a major, two captains, a senior master sergeant, two master sergeants, and a technical sergeant) deliberated on sentence, they were fully cognizant of one fact known to every servicemember of their rank -- retired pay for 20 years of active duty service (which is all appellant expected) is 50 percent of base pay.[3]

---

[2] To the contrary, trial defense counsel acknowledged that appellant was "not knocking on the door to retirement." R. 92.

[3] The military judge's instructions (which were given to the members both verbally and in writing) included accurate assessments of appellant's base pay at the various grades from E-5 to E-1. See Appendix. The difference between the monthly figures appellant was denied the opportunity to present and the figures easily ascertained by the members was de minimus. Accordingly, trial defense counsel's rejected exhibit added nothing to the member's basis of knowledge concerning retirement benefits or the loss thereof. Thus, the instruction did not cover the last column in the Appendix.

Either including or excluding the proffered defense exhibit without placing that evidence in context would both confuse the members and undermine the criminal justice system. Faced with this dilemma, the military judge prevented confusion by excluding the speculative retirement pay chart. This ruling thus precluded any rebuttal evidence concerning virtually mandatory (absent waiver) administrative separation for drug use.

However, the military judge did not preclude counsel from focusing on appellant's retirement. She ruled that counsel could comment on retirement eligibility during both voir dire and sentencing argument. The centerpiece of trial defense counsel's argument was a plea to punish appellate in some way other than by awarding a bad-conduct discharge and depriving him of an opportunity to become retirement eligible in 21 months. Additionally, at appellant's request the military judge instructed the members that a bad-conduct discharge deprives one of substantially all benefits administered by the Department of Veterans Affairs as well as all retirement benefits.

Since I conclude that this military judge did not go beyond the legal principles set forth by this Court in Becker and Greaves, and did not establish any per se rule for admission of retirement-eligibility evidence, there has been no clear abuse

of her discretion, either through misapplication of the law or otherwise.

Accordingly, I would affirm the Court of Criminal Appeals' decision.

APPENDIX

| Grade | Pay | Maximum Forfeiture | Defense Figures | 50 Percent |
|-------|------|--------------------|-----------------|------------|
| E-5 | 1779 | 1186 | 901 | (889) |
| E-4 | 1433 | 955 | 725 | (716) |
| E-3 | 1230 | 820 | 622 | (615) |
| E-2 | 1038 | 692 | 525 | (519) |
| E-1 | 926 | 617 | 468 | (463) |