UNITED STATES, Appellee,

v.

Janice M. WASHINGTON, Senior
Airman, U.S. Air Force,
Appellant.

No. 01–0285.
Crim.App. No. S29570.

U.S. Court of Appeals for
the Armed Forces.

Submitted May 24, 2001.

Decided Sept. 26, 2001.

Crawford, Chief Judge, filed dissenting
opinion.

SULLIVAN, J., delivered the opinion of
the Court, in which GIERKE, EFFRON,
and BAKER, JJ., joined. CRAWFORD,
C.J., filed a dissenting opinion.

For Appellant: *Colonel James R. Wise,
Lieutenant Colonel Timothy W. Murphy,
Lieutenant Colonel Brandon A. Burnett*
(USAFR), and *Captain Patience Schermer.*

For Appellee: *Major Lance B. Sigmon.*

Judge SULLIVAN delivered the opinion
of the Court.

Appellant was tried at Altus Air Force
Base, Oklahoma, by a special court-martial
with members. In accordance with her
pleas, she was found guilty of a single specifi-
cation of larceny of $240.00, in violation of
Article 121, Uniform Code of Military Jus-
tice, 10 USC § 921. On April 14, 1998, she
was sentenced to a bad-conduct discharge,
restriction for 2 months, and reduction to the
grade of Airman (E–2). On June 15, 1998,
the convening authority approved this sen-
tence. The Court of Criminal Appeals af-
firmed. *United States v. Washington,* ACM
S29570, 2000 WL 1879542 (A.F.Ct.Crim.App.
Nov. 27, 2000).

On May 24, 2001, this Court granted re-
view on the following issue:

WHETHER THE MILITARY JUDGE
ERRED TO THE SUBSTANTIAL
PREJUDICE OF APPELLANT WHEN
SHE REFUSED TO ALLOW APPEL-
LANT'S EXHIBIT E INTO EVIDENCE,
A STATEMENT ADVISING THE MEM-
BERS THAT THE IMPOSITION OF A
BAD–CONDUCT DISCHARGE WOULD
DEPRIVE APPELLANT OF ALL RE-
TIREMENT BENEFITS.

We hold that the military judge committed prejudicial error by refusing to admit a summary of expected lost retirement pay (approximately $240,000.00) if appellant was awarded a punitive discharge. *See United States v. Luster*, 55 MJ 67, 72 (2001).

■ Appellant was a senior airman (E–4) who at the time of trial had completed over 18 years of active military service and who could retire during her current enlistment. The excluded defense evidence demonstrated the estimated pay that appellant would receive if she retired at paygrades E–4 or E–3 after completing 20 years of service. It stated:

### RETIREMENT BENEFIT ANALYSIS

Retirement for an E–4 with 20 years of service who was born in 1959, entered the military in 1980, retired in 2000 and has a life expectancy of 73 years, with a monthly gross payment of $716.00.

| | | |
|---|---|---|
| Life Expectancy: | | 73 |
| − Age of Retirement: | | − 41 |
| = Years of Retirement Benefits: | | 32 |
| × 12 months | | × 12 |
| = Number of Payments: | | 384 |
| × Monthly Gross Payment: | | × $716.00 |
| = Total Gross Payments | | $274,944.00 |

Retirement for an E–3 with 20 years of service who was born in 1959, entered the military in 1980, retired in 2000 and has a life expectancy of 73 years, with a monthly gross payment of $615.00.

| | | |
|---|---|---|
| Life Expectancy: | | 73 |
| − Age of Retirement | | − 41 |
| = Years of Retirement Benefits: | | 32 |
| × 12 months | | × 12 |
| = Number of payments: | | 384 |
| × Monthly Gross Payment: | | × $615.00 |
| = total Gross payments | | $236,160.00 |

Difference in amount between retiring as an E–4 and an E–3 based on the information above.

$274,944.00
− $236,160.00
_____
$38,784.00

In our view the military judge erred when she prevented the defense (R. 41, 43) from presenting to the members a complete picture of the financial loss appellant would suffer as a result of a punitive discharge. *See United States v. Luster, supra* at 72 (error for judge to require defense to obliquely address retirement issue only through *voir dire* questions and argument under similar circumstances).

■ We also conclude that appellant was materially prejudiced by the judge's erroneous decision to exclude this defense evidence. Article 59(a), UCMJ, 10 USC § 859(a). Appellant had been previously court-martialed less than a year earlier for crimes related to use of an American Express Government Travel Card. However, evidence was presented in this case that appellant suffered from post-traumatic stress disorder as a result of her home being twice burglarized while she was stationed in England in 1992. After the burglaries, appellant "had difficulty sleeping" and began to gamble excessively to avoid being home alone at night. Appellant became addicted to gambling and was gambling when she committed the offense for which she pleaded guilty and the offenses for which she was previously court-martialed. (R. 76–77) She was eventually diagnosed with compulsive gambling disorder and began receiving treatment for that disorder along with the post-traumatic stress disorder that occasioned it.

Moreover, appellant's rehabilitative potential was not necessarily bleak. Major Brooks, her squadron commander, did testify that appellant's rehabilitation potential "seems slim." (R. 75) However, defense counsel's cross-examination revealed that neither Major Brooks nor Master Sergeant (MSgt) Patten, her supervisor (another government witness), knew of appellant's gambling addiction when they testified as to her rehabilitation potential. Two defense witnesses, Lieutenant Wall and MSgt Wilson, both testified that appellant was "one of the best supervisors" they had worked with, that her work performance was "outstanding," and that her level of performance had not changed even while this charge had been pending. (R. 98–105) MSgt Wilson also opined that she believed appellant had rehabilitation potential. (R. 105) Finally, Captain (Dr.) Lawson, a clinical psychologist who was treating appellant for her disorders, opined:

Her symptoms will appear mainly at night. It does not affect her job performance, as such. She will operate just fine during the

day. It is a specific situation. At home is when she'll experience most of her symptoms.

(R. 91)

All this evidence tends to show that the decision to adjudge a punitive discharge in appellant's case was a "close call." *See United States v. Luster, supra* at 72. Appellant was denied the opportunity to present her particular sentencing case to the members that a punitive discharge effectively imposed a financial punishment *over one thousand times* the amount she had stolen. We cannot say with reasonable certainty that the members' decision as to sentence would have been the same if the excluded information had been presented to them. *See United States v. Luster, supra.*

The decision of the United States Air Force Court of Criminal Appeals as to findings is affirmed and as to sentence is reversed. The sentence is set aside. The record of trial is returned to the Judge Advocate General of the Air Force. A rehearing on sentence may be ordered.

CRAWFORD, Chief Judge (dissenting):

I do not believe the military judge abused her considerable discretion by refusing to admit Defense Exhibit E for identification (an incomplete [1] document reflecting retirement pay appellant might receive at pay grades E–4 and E–3, with 20 years of service and a life expectancy of 73 years). In any event, any error in this case was harmless.

Assuming that the judge's decision to exclude this defense evidence was erroneous, we must determine whether appellant was materially prejudiced by this error. Art. 59(a), Uniform Code of Military Justice, 10 USC § 859(a). Unlike the case of *United States v. Luster,* 55 MJ 67, 72 (2001), the decision to award a punitive discharge to Senior Airman (SrA) Washington was not "a close call."

Appellant pleaded guilty to larceny, in violation of Article 121, UCMJ, 10 USC § 921. Her adjudged and approved sentence was a bad-conduct discharge, restriction for 2 months, and reduction to E–2. This was not appellant's introduction to the military justice system. Less than a year before the court-martial under consideration, then Staff Sergeant Washington was convicted at a special court-martial of violating a lawful general regulation by using her American Express Government Travel Card for non-official cash withdrawals, making a false official statement concerning her possession of that American Express Government Travel Card, and dishonorably failing to pay a debt of over $1,400 to the American Express Corporation, in violation of Articles 92, 107, and 134, UCMJ, 10 USC §§ 892, 907, and 934, respectively. The adjudged and approved sentence for those offenses included a reduction to the rank of Senior Airman (E–4), confinement for 3 months, and a reprimand.

The facts surrounding appellant's larceny, as contained in the stipulation of fact (which was read to the members), are instructive. On the evening of January 3, 1998, appellant was gambling at a truck stop near Goldsby, Oklahoma. During the evening she met the victim, Mrs. Merz. As the record evidences:

> After a few hours, Mrs. Merz indicated she needed more money to continue playing. Because Mrs. Merz suffers from multiple sclerosis and was in a wheelchair, and because it was raining outside and she didn't want to get wet, she asked SrA Washington if she would go to the Automatic Teller Machine (ATM) machine for her and withdraw some money. SrA Washington agreed to do so and Mrs. Merz gave SrA Washington her ATM card and her Personal Identification Number (PIN). Mrs. Merz requested that SrA Washington withdraw $100 from her account for her. SrA Washington proceeded to the ATM machine, conducted the transaction as requested, and returned the money and the ATM card to Mrs. Merz.

> SrA Washington and Mrs. Merz continued to play on the machines. Shortly after midnight, Mrs. Merz ran out of money and

---

1. This exhibit was incomplete and misleading because it spoke only of retirement benefits in the grades of E–4 and E–3; the court members could have reduced appellant as low as the grade of E–1.

asked SrA Washington to go to the ATM machine for her again. It was now the morning of 4 Jan 1998. SrA Washington agreed to go to the ATM again and this time Mrs. Merz asked her to get out $140. Mrs. Merz gave SrA Washington her ATM card again. SrA Washington returned to the ATM and processed the transaction as requested. After finishing that transaction, unbeknownst to Mrs. Merz, SrA Washington then made two other withdrawals that were not authorized by Mrs. Merz. SrA Washington withdrew an additional $100 and $140 during these unauthorized transactions. SrA Washington then returned the ATM card and $140 to Mrs. Merz. Mrs. Merz then gave SrA Washington $40 for going and getting the $140. SrA Washington kept the additional $240 and did not inform Mrs. Merz about the additional transactions.

While SrA Washington and Mrs. Merz were playing, Mrs. Merz asked SrA Washington her name. SrA Washington thought about the unauthorized withdrawals, and with the intent to deceive Mrs. Merz, stated that her name was "Janice Wilson."

SrA Washington won approximately $700 on 4 January 1998.

The Government presented two witnesses during sentencing. Major Brooks and Master Sergeant (MSgt) Patten opined that appellant's duty performance was good to excellent, but she had "slim" to no rehabilitation potential. Neither wanted her back in the squadron. Defense counsel presented Captain (Dr.) Lawson, appellant's doctor, a clinical psychologist, who testified that appellant was suffering from post-traumatic stress disorder as well as chronic and compulsive gambling problems. Dr. Lawson attributed these maladies to two home burglaries which appellant experienced while stationed in England in 1992. Appellant also presented two witnesses, Second Lieutenant Wall and MSgt Wilson, both of whom attested to her outstanding supervisory skills. MSgt Wilson stated

that appellant had rehabilitation potential. Finally, in an unsworn statement, appellant begged the members not to give her a bad-conduct discharge. In her own words: "[T]he effects of a bad-conduct discharge will be devastating to me. First, I will lose my retirement benefits." She repeated the last statement later on.

During closing argument, trial defense counsel dramatized how close appellant was to retirement by using a 20-inch tape measure, using an inch marker on that tape measure for each year of appellant's service in the Air Force. Defense counsel showed the court members that appellant was just past 18 inches and how close that was to the 20-inch mark. Counsel also informed the members that if they followed trial counsel's logic, they would cut off the first 17 inches, or years, of that tape measure as if appellant had never served her country. Defense counsel told the court members very plainly that if they awarded appellant a bad-conduct discharge, she would "lose all retirement benefits."

Finally, the judge clearly informed the members of the effect of a bad-conduct discharge [2]:

> This court may adjudge a bad-conduct discharge. *Such a discharge* deprives one of substantially all benefits administered by the Department of Veterans Affairs and the Air Force establishment and *will preclude SrA Washington from* completing the remainder of her current enlistment and *becoming eligible for retirement benefits.*

(Emphasis added.) *See United States v. Boyd,* 55 MJ 217, 221 (2001). The question of appellant's retirement, whether at her current grade of E–4 or at some lesser grade, was clearly placed before the members. Regardless whether the military judge abused her discretion in refusing to admit Defense Exhibit E for identification, appellant has suffered no prejudice. Appellant's service record, her prior conviction, the facts sur-

---

2. This fact clearly renders the granted issue without merit on its face. *See* 55 MJ at 441–42 (maj. op.).

rounding the offense to which she pleaded guilty, her explanation for her misconduct (both past and present), as well as her rehabilitation potential or lack thereof, were clearly before the members. She has suffered absolutely no prejudice. Accordingly, I would affirm the decision of the Court of Criminal Appeals in its entirety.