# UNITED STATES NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS

———————————

## No. 201600197

———————————

## UNITED STATES OF AMERICA
Appellee

v.

## FREDERICO A. WILLIAMS
Master Sergeant (E-8), U.S. Marine Corps
Appellant

———————————

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge: Major Mark D. Sameit, USMC.
Convening Authority: Commanding General, 3d MAW,
MCAS Miramar, San Diego, CA.
Staff Judge Advocate's Recommendation: Colonel Daren K.
Margolin, USMC. Addendum: Captain J.A. Cacioppo, USMC.
For Appellant: Lieutenant Jacqueline M. Leonard, JAGC, USN.
For Appellee: Lieutenant Commander Jeremy R. Brooks, JAGC,
USN; Lieutenant Taurean K. Brown, JAGC, USN.

———————————

Decided 16 November 2017

———————————

Before GLASER-ALLEN, MARKS, and WOODARD, *Appellate Military Judges*

———————————

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Practice and Procedure 18.2.**

———————————

GLASER-ALLEN, Chief Judge:

A panel of members with enlisted representation sitting as a general court-martial convicted the appellant, contrary to his pleas, of three specifications of violating a lawful general order prohibiting fraternization, one specification of making a false official statement, one specification of

larceny, three specifications of adultery, and one specification of obstructing justice, in violation of Articles 92, 107, 121, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892, 907, 921, and 934.[1] The members sentenced the appellant to a reprimand, reduction to pay grade E-1, six months' confinement, and a bad-conduct discharge. The convening authority (CA) approved the sentence as adjudged and, except for the punitive discharge, ordered the sentence executed.

We address in detail one assignment of error (AOE) submitted by the appellant:[2] whether the forum and approved sentence in the appellant's case lacks uniformity with the forum and punishment of other senior Marines accused of the same or similar offenses.[3] After careful consideration of the record of trial and the pleadings of both parties, we conclude that the findings and sentence are correct in law and fact, and that no error materially prejudicial to the substantial rights of the appellant occurred. Arts. 59(a) and 66(c), UCMJ.

## I. BACKGROUND

The appellant, a married man since 2008, was assigned to Marine Wing Headquarters Squadron 3, 3d Marine Aircraft Wing (3d MAW) and stationed at Marine Corps Air Station (MCAS) Miramar in 2012. He served as a maintenance management chief and was one of the senior enlisted leaders within 3d MAW's G-4 division. As such, he "bridged the gap between the maintainers . . . and the grounds supply" crew within G-4 and was responsible for ensuring the overall ground material readiness for 3d MAW.[4]

In early November 2014, 3d MAW initiated an unrelated command investigation into an equal opportunity complaint made against other senior servicemembers. The investigating officer (IO) "believe[d] from talking with another person involved in the investigation, that there might be an issue with the travel claim" submitted by the appellant for his trip to MCAS

---

[1] The members acquitted the appellant of one specification of making a false writing in violation of Article 123, UCMJ, 10 U.S.C. § 923.

[2] The appellant's other AOE—that it was plain error for the military judge to instruct the members that "if, based on your consideration of the evidence, you are firmly convinced that the accused is guilty of the crime charged, you must find him guilty"—was resolved by our superior court in *United States v. McClour*, 76 M.J. 23 (C.A.A.F. 2017). Consequently, we summarily reject it. *United States v. Clifton*, 35 M.J. 79 (C.M.A. 1992); *see also United States v. Rendon*, 75 M.J. 908, 916-17 (N-M. Ct. Crim. App. 2016), *rev. denied*, 75 M.J. 128 (C.A.A.F. 2017).

[3] Raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

[4] Record at 485.

Yuma.[5] In particular, the IO was concerned about discrepancies in a letter of non-availability filed with the appellant's travel claim to justify off-base accommodations and a lodging reimbursement of $332.00.

The IO discussed his concerns with the former MCAS Yuma bachelor's enlisted quarters manager, who had retired from the military and moved to a related civilian billeting position at MCAS Yuma. The manager explained that he had not signed the non-availability letter offered by the appellant to justify the off-base accommodations. At that point, the IO referred the matter to the Naval Criminal Investigative Service (NCIS), who initiated an independent investigation into the appellant's travel claim.

During this NCIS investigation, agents interviewed members of 3d MAW and subsequently learned of the appellant's extramarital affairs and inappropriate relationships with First Lieutenant (1stLt) SS, Sergeant (Sgt) IH, Sgt CS, and Ms. NW. Although not his direct supervisor, 1stLt SS was an officer within the appellant's department with whom he had sexual intercourse on a regular basis—often in their offices within the departmental spaces. The appellant also engaged in sexual intercourse with Sgt IH and maintained an inappropriately familiar relationship with Sgt CS, though both were his subordinates. Finally, the appellant had an adulterous relationship with a civilian high school friend, Ms. NW, who had accompanied him on the MCAS Yuma trip. He also told her to lie if anyone asked about their relationship by saying she was his cousin.

## II. DISCUSSION

Although there were no companion cases to his court-martial, the appellant asserts that his case's disposition and sentence are disproportionately severe compared to those of other Marine E-8s charged with similar offenses and in light of his accomplished 21-year career.[6] He asks this court to set aside his bad-conduct discharge, thus preserving his ability to retire from the Marine Corps.[7] We decline to do so.

## A. Sentence disparity

Each "court-martial is free to impose any [legal] sentence it considers fair and just." *United States v. Turner*, 34 C.M.R. 215, 217 (C.M.A. 1964). Therefore, "[t]he military system must be prepared to accept some disparity

---

[5] *Id.* at 451.

[6] Appellant's Brief of 7 Dec 2016 at 16-18; Staff Judge Advocate's Recommendation of 14 Apr 2016, Enclosure (2), Defense-Proposed Post-trial Agreement in the case of *United States v. Williams* (Post-trial Agreement) dtd 29 Mar 2016 at 2-3.

[7] Appellant's Brief at 18.

. . . provided each military accused is sentenced as an individual." *United States v. Durant*, 55 M.J. 258, 261-262 (C.A.A.F. 2001) (citations omitted). In execution of this highly discretionary function, we are neither required to, nor precluded from, considering sentences in other cases, except when those cases are "closely related." *United States v. Ballard*, 20 M.J. 282, 286 (C.M.A. 1985); *United States v. Wacha*, 55 M.J. 266, 267 (C.A.A.F. 2001). As a general rule "sentence appropriateness should be determined without reference to or comparison with the sentences received by other offenders." *Ballard*, 20 M.J. 283 (citations omitted). Notably one narrow exception to this general principle of non-comparison exists as we are "required . . . 'to engage in sentence comparison with *specific cases* . . . in those rare instances in which sentence appropriateness can be fairly determined *only* by reference to disparate sentences adjudged in closely related cases.'" *Wacha*, 55 M.J. 266, 267 (citations omitted). When requesting relief by way of this exception, an appellant's burden is twofold: the appellant must demonstrate "that any cited cases are 'closely related' to his or her case and that the resulting sentences are 'highly disparate.'" *Lacy*, 50 M.J. at 288. If the appellant succeeds on both prongs, then the burden shifts to the government to "show that there is a rational basis for the disparity." *Id*.

For cases to be considered closely related, "the cases must involve offenses that are similar in both nature and seriousness or which arise from a common scheme or design." *United States v. Kelly*, 40 M.J. 558, 570 (N.M.C.M.R. 1994). This threshold requirement can be satisfied by evidence of "co[-]actors involved in a common crime, servicemembers involved in a common or parallel scheme, or some other direct nexus between the servicemembers whose sentences are sought to be compared[.]" *Lacy*, 50 M.J. at 288-89 (finding cases were closely related "where appellant and two other Marines engaged in the same course of conduct with the same victim in each other's presence").[8]

When assessing disparity among sentences, we look only to *adjudged* sentences, rather than those approved or bargained for in a pre or post-trial agreement: "[a]djudged sentences are used because there are several intervening and independent factors between trial and appeal -- including discretionary grants of clemency and limits from pretrial agreements -- that that might properly create the disparity[.]" *United States v. Roach*, 69 M.J. 17, 21 (C.A.A.F. 2010). Accordingly, we "refrain from second guessing or comparing a sentence that flows from a lawful pretrial agreement or a

---

[8] *See also*, *United States v. Moore*, No. 201100670, 2012 CCA LEXIS 693, at *5, unpublished op. (N-M. Ct. Crim. App. 24 May 2012) (finding the appellant's case was not closely related to one of his co-conspirators because they "participated in separate acts of drug distribution . . . on different occasions.").

convening authority's] lawful exercise of his authority to grant clemency to an appellant." *United States v. Widak*, No. 201500309, 2016 CCA LEXIS 172, at *7, unpublished op. (N-M. Ct. Crim. App. 22 Mar 2016) (per curiam) (citations omitted).

Finally, we acknowledge disparity among sentences may arise from "differences in initial disposition rather than sentence uniformity." *United States v. Noble*, 50 M.J. 293, 295 (C.A.A.F 1999). However, "[m]ilitary commanders stationed at diverse locations throughout the world have broad discretion to decide whether a case should be disposed of through administrative, non-judicial, or court-martial channels." *Lacy*, 50 M.J. at 287 (citation omitted). Therefore, if "cases are closely related, yet result in widely disparate disposition, we must instead decide whether the disparity in disposition results from good and cogent reasons." *United States v. Moore*, No. 201100670, 2012 CCA LEXIS 693, at *4, unpublished op. (N-M. Ct. Crim. App. 24 May 2012) (citing *Kelly*, 40 M.J. at 570).

Here, the appellant's request for sentence comparison and relief is based on five sub-jurisdictional cases[9] convened by commands across the Fleet.[10] These cases do not constitute closely related offenses. The appellant cannot identify any "close relationship" between his case and the other five, except to show that, like his case, all involve a Marine E-8 charged with adultery, among other offenses. Far from being "co-actors" or "servicemembers involved in a common or parallel scheme," the appellant's offenses and those committed by the other five Marine E-8s took place at different times, at different commands, in different parts of the world, and involved unrelated women under differing factual circumstances. *Lacy*, 50 M.J. at 288. Therefore, we find no "direct nexus" between the appellant's misconduct and that of his proposed comparison cases, especially when considering the appellant's fraternization and adultery specifications involved multiple women and only the appellant was convicted of larceny and obstruction of justice in addition to his other offenses. *Id.*

---

[9] Of the five cases cited by the appellant, three Marines negotiated pre or post-trial agreements for nonjudicial punishment, one Marine was reduced to E-7 and given 14 days' restriction at special court-martial but retained at an administrative separation board, and one was reduced to E-7 with a forfeiture of $4,400.00 at a general court-martial. Because these cases did not result in a punitive discharge or confinement for at least one year, all fell outside the automatic review by this court. Appellant's Brief at 16-17.

[10] Whereas the appellant was stationed at MCAS Miramar, CA; the five cases he cites originated from Okinawa; Camp Lejeune, NC; Quantico, VA; Camp Pendleton, CA; and Hawaii; respectively. *Id.*

Although it is within our discretion "to consider and compare other courts-martial sentences [as the appellant has requested in reviewing his case] for sentence appropriateness and relative uniformity,"[11] we are unpersuaded by the cases cited by the appellant. Even if the cases were closely related, of the five cases cited in his brief, the appellant points to two that received lesser adjudged sentences. The first was a general court-martial that awarded an adjudged sentence of reduction to E-7 and a forfeiture of $4,400.00 for convictions of indecent exposure, adultery, disorderly conduct, and indecent language. The second was a special court-martial that awarded reduction to E-7 and 14 days' restriction for convictions of fraternization, adultery, and false official statement. We cannot look to the other three cited punishments, as they were the result of permissible pre or post-trial agreements for either nonjudicial punishment or retention at an administrative separation board. S*ee Widak*, 2016 CCA LEXIS 172, at *7 ("Clemency and pretrial agreements involve highly subjective processes which this court is ill-equipped to second guess[.]"). Further, these two adjudged sentences were sub-jurisdictional, and thus lack a "court-martial record of findings and sentence that can be compared, which means that the issue of sentence uniformity is not present[.]" *Noble*, 50 M.J. at 295; *see also Ballard*, 20 M.J. at 285 ("From the mere face of court-martial promulgating orders or similar documents, it is simply not possible to assess the multitude of aggravating and mitigating sentencing factors considered in the cases they represent."). Indeed, the appellant provided us a five-sentence snapshot of the two cases with adjudged sentences, which is simply insufficient for assessing sentence disparity.[12]

The appellant fails to carry his dual burden of showing a closely related case with an adjudged sentence to warrant comparison. Therefore, we find this assignment of error is without merit.[13] That a servicemember, somewhere, committed similar offenses and received a lighter punishment or clemency does not entitle all future offenders to the same benefit. *See Kelly*, 40 M.J. at 570 ("Ordinarily, leniency towards one accused does not necessarily flow to another, nor should it.").

---

[11] *Wacha*, 55 M.J. at 267.

[12] Although requested by the appellant, we also decline to examine disparity in initial dispositions. All of the cited cases were initially referred to court-martial and the appellant has neither alleged that he was the victim of discriminatory prosecution, nor that it was unlawful to refer the charges against him to a court-martial in light of the nonjudicial punishment of 1stLt SS.

[13] *See also*, *Lacy*, 50 M.J. at 289 ("Having failed to show a high disparity in his sentence, appellant is not entitled to a further examination of the reasons for any differences in the sentences.").

**B. Sentence appropriateness**

Apart from the comparative analysis, we are nevertheless able to evaluate the appellant's sentence on its own facts as part of our required due diligence under Article 66(c), UCMJ. *See United States v. Baier*, 60 M.J. 382, 384-85 (C.A.A.F. 2005).[14] We review sentence appropriateness *de novo*. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006). "Sentence appropriateness involves the judicial function of assuring that justice is done and that the accused gets the punishment he deserves." *United States v. Healy*, 26 M.J. 394, 395 (C.M.A. 1988). This requires our "individualized consideration of the particular accused 'on the basis of the nature and seriousness of the offense and the character of the offender.'" *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982) (quoting *United States v. Mamaluy*, 27 C.M.R. 176, 180-81 (C.M.A. 1959)). In making this assessment, we analyze the record as a whole. *Healy*, 26 M.J. at 395. Notwithstanding our significant discretion for determining appropriateness, we must remain mindful that we may not engage in acts of clemency. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010).

During sentencing, the defense may present matters in mitigation, and "retirement-eligible servicemembers are entitled to place into evidence the fact that a punitive discharge would deny them retirement benefits" . . . including "evidence of the potential dollar amount subject to loss." *United States v. Sumrall*, 45 M.J. 207, 209 (C.A.A.F. 1996) (citations omitted). Even when an accused is not quite eligible, but instead "knocking at retirement's door," such evidence "is not irrelevant or collateral." *United States v. Stargell*, 49 M.J. 92, 93 (C.A.A.F. 1998) (citation omitted). In fact, our superior court has espoused that "in both situations, the value of retired pay should be recognized as the single most important consideration in determining whether to adjudge a punitive discharge." *United States v. Becker*, 46 M.J. 141, 144 (C.A.A.F. 1997) (citation and internal quotation marks omitted). Accordingly, military judges are required "to instruct on the impact of a punitive discharge on retirement benefits," unless "there is no evidentiary predicate for it or the possibility of retirement is so remote as to make it irrelevant to determining an appropriate sentence." *United States v. Boyd*, 55 M.J. 217, 221 (C.A.A.F. 2001).

Should a punitive discharge be adjudged despite its effect of denying future retirement pay, our superior court has confirmed the constitutionality of such a sentence. *See United States v. Reed*, 54 M.J. 37, 44-45 (C.A.A.F.

---

[14] *See also United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1988) ("However proper it may be for the convening authority and [Courts of Criminal Appeals] to consider sentence comparison as an aspect of sentence appropriateness, it is only one of many aspects of that consideration.") (citations omitted).

2000) (appellant's loss of over $700,000.00 in retirement pay did not amount to a "fine" imposed in violation of the Excessive Fines Clause of the Eighth Amendment); *Sumrall*, 45 M.J. at 207 (appellant's loss of over $600,000.00 in retirement pay did not violate due process, nor constitute cruel and unusual punishment under the Eighth Amendment). Setting aside a sentence for material prejudice depends solely on "whether appellant was allowed to substantially present his particular sentencing case to the members on the financial impact" of a dishonorable or bad-conduct discharge. *United States v. Luster*, 55 M.J. 67, 72 (C.A.A.F. 2001).

Awarding a punitive discharge to a Master Sergeant with 21 years' service and the resulting substantial loss in retirement benefits is a significant punishment. Therefore, we must carefully consider the appellant's entire service record, including the impact on the appellant's family members from the loss of retirement income, his post-trial submissions, and the character witness testimony regarding the appellant's character as a husband, father, and Marine. We balance those factors against the severity of the offenses for which he was convicted to make our final determination of the appropriateness of his bad-conduct discharge and overall sentence.

The appellant's brief minimizes the seriousness of his charges, describing the majority of his actions as "consensual sexual intercourse with adult women" and argues, "[t]here are no good or cogent reasons for a punitive discharge when weighing [his] accomplished career against his *minor* convictions."[15] This characterization of the appellant's misconduct demonstrates failure to grasp its true impact, and to understand how inimical it is to military service. Senior enlisted noncommissioned officers like the appellant are the backbone of the Marine Corps and the naval service as a whole—and as such, have a particular responsibility to lead by example.[16] As our superior court noted years ago:

> [C]ombat readiness of troops depends in large part upon their motivation, but discipline and punishment cannot alone develop the necessary motivation. Leadership is also required, and one aspect of successful leadership is concern for the welfare of subordinates. Loyalty in a military unit, as in other organizations, is a two-way street.

---

[15] Appellant's Brief at 17-18 (emphasis added).

[16] *See, e.g.*, *United States v. Tollinchi*, No. 9800246, 2002 CCA LEXIS 253, at *5, unpublished op. (N-M. Ct. Crim. App. 22 Oct 2002) ("As a Marine sergeant, Appellant was expected to set an example for other marines to follow" and "[t]he fact that he was a Marine sergeant and a recruiter makes his misconduct all the more reprehensible.")

*United States v. Stuckey*, 10 M.J. 347, 359 (C.M.A. 1981).

This is not a case of an isolated extramarital affair, nor one involving indiscretions unknown to his professional colleagues. The case before us involves not just a Marine E-8, but a Master Sergeant, who by his rank holds a revered place within his unit and the Marine Corps. The appellant repeatedly acted with flagrant disregard of the consequences upon his unit by having regular adulterous intercourse with a superior officer in his office, suggesting a subordinate sergeant hold the camera to film his sexual escapades, having sex with a different subordinate, stealing from the government, and telling a civilian mistress to lie about the nature of their relationship to anyone who asked. Significantly, when word of the adultery and fraternization spread to other active-duty Marines, the appellant feigned offense at the rumors, continued his behavior, and blatantly lied to an NCIS agent just hours after having sexual relations with the superior officer; stating six times "I don't deal with military" when referring to his sexual exploits.[17]

The members had ample opportunity to consider both his career accomplishments and the impact of the loss of retirement pay in considering an appropriate sentence. The defense called an expert witness to prepare a written document and testify about the financial impact of the appellant's potential loss of retired pay. This information was provided to each member in sentencing, to the CA for clemency considerations, and to the court. The military judge properly instructed not only about the stigma of a bad-conduct discharge, but also its effect on familial support[18] and retirement.[19] Therefore, we conclude the appellant was not materially prejudiced because he was "allowed to substantially present his particular sentencing case to the members on the financial impact of a punitive discharge." *Luster*, 55 M.J. at 72 (citation omitted).

Considering the nature and seriousness of the appellant's misconduct, the distrust it engendered in his unit, his special position as a Marine Corps Master Sergeant, and his otherwise honorable service, as well as the evidence

---

[17] Prosecution Exhibit 3 at 7.

[18] Record at 639 ("The trial and defense counsel have made reference to the availability or lack thereof of monetary support for the accused's family members. Again, by operation of law, if you adjudge either confinement for more than six months or any confinement and a punitive discharge, the accused and his family will automatically forfeit all pay and allowances.").

[19] *Id.* at 640 ("In addition, a punitive discharge terminates the accused's status and the benefits that flow from that status, including the possibility of becoming a military retiree and receiving retired pay and benefits.").

submitted in extenuation and mitigation, we find the approved sentence is appropriate for this offender and his offenses. Granting sentence relief at this point would be to engage in clemency, and we decline to do so. *Healy*, 26 M.J. at 395-96.

## III. CONCLUSION

The findings and the sentence are affirmed.

Senior Judge MARKS and Judge WOODARD concur.

For the Court

R.H. TROIDL
Clerk of Court