# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
LIND, KRAUSS, and PENLAND
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Staff Sergeant ALEJANDRO L. PEREZ III**
**United States Army, Appellant**

ARMY 20130174

Headquarters, Fort Stewart
Tiernan P. Dolan, Military Judge
Lieutenant Colonel Kent Herring, Acting Staff Judge Advocate

For Appellant:  Lieutenant Colonel Charles Lozano, JA; Major M. Patrick Gordon, JA; Captain Amanda R. McNeil, JA (on brief).

For Appellee:  Colonel John P. Carrell, JA; Major A.G. Courie III, JA; Major Daniel D. Derner, JA; Major Daniel M. Goldberg, JA (on brief).

29 May 2015

----------------------------------
MEMORANDUM OPINION
----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

PENLAND, Judge:

A panel composed of officer and enlisted members sitting as a general court-martial convicted appellant, contrary to the plea entered by the military judge on appellant's behalf, of one specification of assault consummated by a battery in violation of Article 128, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. § 928 (2006).[1]  The panel sentenced appellant to a bad-conduct discharge

---

[1] Appellant was also charged with one specification of rape and one specification of aggravated assault with a force likely to produce death or grievous bodily harm in violation of Articles 120 and 128, UCMJ, 10 U.S.C. 920, 928 (2006 & Supp. II 2009).  Pursuant to his pleas of not guilty, the panel acquitted appellant of both offenses.

and reduction to the grade of E-1. The convening authority approved the adjudged sentence.

We review this case under Article 66, UCMJ. Appellant raises two assignments of error, one of which warrants discussion and relief. We have also considered appellant's matters personally submitted pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982); they are without merit. Appellant asserts the military judge abused his discretion by excluding his medical records as evidence of mitigation and rehabilitation under Rule for Court-Martial 1001(c), and that this error prejudiced appellant. We agree and will provide relief in our decretal paragraph.

### Procedural Background

Appellant pled guilty to assault consummated by a battery. In the providence inquiry, he described an incident on 2 March 2009 in which he argued with and struck his wife, JP. Appellant indicated his consumption of Adderall at the time caused him to misapprehend JP's actions as physically threatening, leading to his assaultive behavior. The military judge concluded that appellant had raised self-defense, entered a plea of not guilty to the affected specification, and assembled the court for a fully contested trial.

Appellant testified that on the night of the charged assault, he was under the influence of Adderall, a medication prescribed for his attention deficit hyperactivity disorder (ADHD), which caused him to believe it was necessary to push his wife because she entered his personal space. The government also introduced evidence of appellant's Adderall use, eliciting testimony from JP that appellant's consumption of the drug "made him worse" and that "he just went off in a rage, especially when he was on medication." The military judge instructed the panel on self-defense, including that: "The issue of Adderall consumption is relevant only to whether the accused actually believed the amount of force he used was required to protect himself. It is not relevant to any other issue."

Pre-sentencing proceedings began shortly after the panel found appellant guilty of the assault. The military judge granted defense counsel's request to relax the rules of evidence under Rule for Courts-Martial [hereinafter R.C.M.] 1001(c)(3). Toward the end of appellant's pre-sentencing case, defense counsel offered a portion of appellant's medical records. The government objected, citing a lack of notice under Military Rule of Evidence [hereinafter Mil. R. Evid.] 513 and stating it had received the records approximately one hour earlier.

The medical records evinced appellant's interaction with health care providers for the period of February through April 2009. The records one month prior to his assault of JP reflect: appellant took Adderall to manage his ADHD; appellant was

2

concerned about his "anxious and assertive behavior" with soldiers; and appellant requested a decreased Adderall dosage or a change in medication. A health care provider reduced his medication and recommended appellant be reevaluated if the symptoms did not change. After the assault, appellant was command referred to and attended anger management group counseling, individual counseling, and cognitive behavioral therapy. Appellant then told his providers that: he started taking Adderall six weeks previously; while Adderall helped mitigate forgetfulness and improve concentration, he noticed an increase in his anger and aggravation level; he believed his assault was due to becoming enraged as a result of taking Adderall; he had ceased taking Adderall since his arrest; he would like counseling to "organize" his life. The records also discussed appellant's progress at these classes, describing his previous anger management techniques as ineffective and identifying anger management counseling as beneficial.

The military judge deferred ruling on admissibility of the records. Appellant then testified under oath, describing *inter alia*, his post-assault improvement as a result of anger management classes and cognitive behavioral therapy counseling. After this testimony, the military judge convened an Article 39(a) session and addressed the medical records. When defense counsel confirmed providing them to the government an hour before, the military judge responded:

> MJ: Defense, It think I've made it clear -- well, let me make it clear. I don't like trial by ambush.[2] I consider that sort of late disclosure an ambush. For that reason, I'm not going to even consider your motion to introduce the evidence. Were I to consider it, I would not allow its admission under 403. It is filled with statements and assertions that are confusing, would unduly waste the

---

[2] The military judge was apparently referring to an earlier discussion with defense counsel during the defense case-in-chief, after the defense counsel informed the judge that appellant would testify regarding his use of Adderall on the night of the assault. The judge said he was "disappointed," "unhappy," and "surprise[d]" that defense counsel waited "to have this issue briefed in the middle of trial. . . . [with] no notice to the court, no notice to the government[.]" The judge admonished defense counsel that: "The reason I set trial schedules and motions deadlines is so that all parties can enter the trial knowing the litigation battlefield upon which they will enter. And you have disrupted the order that this court has tried to impose on these proceedings by your actions." These comments were made despite the judge's and the government's extant knowledge of appellant's Adderall use; indeed, the military judge had earlier rejected appellant's plea of guilty to the assault after finding that appellant was raising self-defense in describing his reaction to Adderall.

court's time, and frankly are unfairly prejudicial. As well, it contains hearsay, numerous statements by the accused, some of which astoundingly raise mental health issues that you have affirmatively waived in this court-martial. So, that's why I wouldn't allow it, even were I to consider it. But because of the ambushery you've put into play, I'm simply not going to consider its admission.

During sentencing argument, trial counsel argued appellant's anger management counseling had not resolved his anger problems. He further argued: "This Soldier can't be rehabilitated because he can't accept -- he can't accept what he has done as wrong." The court closed for sentencing deliberations. Fifty-one minutes later, the panel returned to ask: "May the panel recommend a lesser discharge than the bad[-]conduct?" The military judge correctly instructed that a bad-conduct discharge was the only discharge they could adjudge. After some clarifying dialogue with the panel president, the military judge again correctly instructed that the members were authorized to make a recommendation in connection with their adjudged sentence, but they "must not adjudge an excessive sentence in reliance upon possible mitigating action by the Convening or higher authority." The panel president indicated his understanding, and the court closed for deliberations. Less than twenty minutes later, the panel announced the adjudged sentence and did not recommend clemency.

## Law and Analysis

The accused possesses a broad right to present evidence in mitigation and extenuation during sentencing. *See* R.C.M. 1001(c); *United States v. Becker*, 46 M.J. 141, 143 (C.A.A.F. 1997); *see also United States v. Jackson*, 36 C.M.R. 677, 679 (A.B.R. 1966) ("An accused has a fundamental right after findings and prior to sentencing to present evidence in mitigation and extenuation as to the offenses of which he stands convicted."). Matters in extenuation "serve[] to explain the circumstances surrounding the commission of an offense, including those reasons for committing the offense which do not constitute a legal justification or excuse." R.C.M. 1001(c)(1)(A). Matters in mitigation are "introduced to lessen the punishment to be adjudged by the court-martial, or to furnish grounds for a recommendation of clemency." R.C.M. 1001(c)(1)(B).

We review the military judge's decision to exclude evidence for an abuse of discretion. *United States v. Griggs*, 61 M.J. 402, 406 (C.A.A.F. 2005). "A ruling based on an erroneous view of the law constitutes an abuse of discretion." *Id.*

We hold the military judge abused his discretion by excluding appellant's medical records during presentencing. The offered records were admissible. They were logically relevant under Mil. R. Evid. 401 and 402 and legally relevant under

Mil. R. Evid. 403. The Mil. R. Evid. 403 balancing test under these facts favored admissibility. Their probative value—that is, their tendency to extenuate appellant's misconduct, demonstrate his rehabilitative potential, and mitigate his punishment—was not substantially outweighed by the danger of unfair prejudice. Indeed, we perceive no danger of unfair prejudice. This is especially true in light of the judge's decision to relax the rules of evidence.

We also hold the judge abused his discretion when he plainly refused "to consider . . . admission" of the medical records because no evidence supports the judge's conclusion that the defense ambushed the government or the trial court in this case. As the government points out in its brief, the record of trial contains no indication of a reciprocal government discovery request under R.C.M. 701(b)(1)(B)(ii). We further note that JP's direct testimony evinced the government's understanding of appellant's relevant medical condition. Finally, even if the defense disclosure to the government was untimely, the military judge made no finding that the government was prejudiced and he failed to consider remedies short of excluding the defense evidence. *See generally* R.C.M. 701(g)(3) discussion.

In this case, preventing admission of medical records impermissibly restricted appellant's right to present matters in extenuation and mitigation in his sentencing. *See Becker*, 46 M.J. at 144. We now turn to deciding whether appellant was prejudiced by this error. When evidence is erroneously excluded during the presentencing portion of a court-martial, we must determine if the error "substantially influenced the adjudged sentence." *Griggs*, 61 M.J. at 410.

Unable to present the records and argue inferences from them, appellant was particularly disadvantaged in corroborating his own testimony and responding to government counsel's strong argument about his dim chances of rehabilitation; for example, he was unable to show the portion of his records in which he sought help for negative changes in his behavior resulting from Adderall before the assault and acknowledged the wrongfulness of his abusive behavior after the assault. Further, considering the panel's question about recommending a less than punitive discharge, we conclude their decision was close. *See United States v. Washington*, 55 M.J. 441, 442-43 (C.A.A.F. 2001) (prejudicial error for military judge to exclude appellant's evidence of potential loss of retirement pay because evidence showed the decision to adjudge a punitive discharge was a "close call"). Under these facts, "we cannot be confident that the error[] during sentencing did not 'substantially sway' the members in their decision to adjudge a punitive discharge." *United States v. Reyes*, 63 M.J. 265, 268 (C.A.A.F. 2006).

Finally, we must answer whether we should send this case back for a sentence rehearing or whether we can reassess the sentence. Our superior court permits reassessment if this court can "determine to its satisfaction that, absent any error, the sentence adjudged would have been of at least a certain severity, [because]

then a sentence of that severity or less will be free of the prejudicial effects of error . . . ." *United States v. Winckelmann*, 73 M.J. 11, 15 (C.A.A.F. 2013) (quoting *United States v. Sales*, 22 M.J. 305, 308 (C.M.A. 1986)) (internal quotation marks omitted). Applying the *Winckelmann* factors, including consideration of an additional factor—that of appellant's request for sentence reassessment rather than a sentence rehearing—we find reassessment is proper in this case. We can reliably determine the least severe sentence that would have been imposed had the medical records been admitted and considered by the members, thereby purging the prejudicial effect of this error.

## CONCLUSION

The findings of guilty are AFFIRMED. Reassessing the sentence on the basis of the error noted, the entire record, and in accordance with the principles of *Winckelmann*, 73 M.J. 11, and *Sales*, 22 M.J. 305, the court affirms only so much of the sentence as provides for reduction to the grade of E-1. The bad-conduct discharge is set aside.[3] All rights, privileges, and property, of which appellant has been deprived by virtue of the portion of the sentence set aside by this decision, are ordered restored. *See* UCMJ arts. 58a(b), 58b(c), and 75(a).

Senior Judge LIND and Judge KRAUSS concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

---

[3] *See United States v. Vasquez*, 54 M.J. 303, 306 (C.A.A.F. 2001). In *Vasquez*, the Court of Appeals for the Armed Forces (CAAF) could not say with "fair assurance" that the inadmissible sentencing evidence did not have a substantial influence on the sentence imposed by the military judge. 54 M.J. at 306. Applying *Sales*, 22 M.J. 305, CAAF remanded the case for the service court to either order a sentence rehearing or reassess and affirm a sentence that did not include a bad-conduct discharge. *Id.*